**MARSHALL–SILVER CONSTRUCTION COMPANY, INC. and Silver Construction, Inc., Appellants,**

v.

**M. Mark MENDEL, Daniel E. Murray, and M. Mark Mendel Ltd., Appellees.**

**No. 87–1187.**

United States Court of Appeals, Third Circuit.

Argued Oct. 8, 1987.

Opinion Dec. 9, 1987.

Decided Jan. 18, 1990.

Richard M. Jordan, David E. Sandel, Jr., White and Williams, Philadelphia, Pa., for appellants.

H. Robert Fiebach, David I. Bookspan, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa., for appellees.

Before STAPLETON and WEIS, Circuit Judges, and DIAMOND, District Judge.*

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

In *Marshall–Silver Constr. Co. v. Mendel*, 835 F.2d 63 (3d Cir.1987), this court affirmed the dismissal of a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68 (1982 ed. and Supp. V), based on the defendants' allegedly extortionate attempt to drive the plaintiff out of business. We concluded that the plaintiff's allegations of racketeering activity, even if taken as true, were insufficient to support the requisite finding that a "RICO pattern" existed and we therefore affirmed the district court's

---

* Honorable Gustave Diamond, United States District Judge for the Western District of Pennsyl-

dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6). The Supreme Court granted Marshall–Silver's petition for a writ of certiorari, vacated our judgment, and remanded the case for further consideration in light of the Court's recent decision in *H.J. Inc. v. Northwestern Bell Telephone Co.*, —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Upon reconsideration, we will affirm the district court's dismissal of the complaint for failing to allege a sufficient RICO pattern.

## I.

A more detailed account of the facts of this case is set out in our initial opinion, 835 F.2d at 63; the facts essential to this decision, however, are summarized here. Plaintiff Marshall–Silver, a general contractor, and the defendants became embroiled in a dispute when Marshall–Silver withheld payment from one of its subcontractors, Barton Engineering Co. ("Barton"), for failing to complete its work in a timely and acceptable manner. The defendants Mendel and Murray were shareholders and officers of Barton. Their law firm, which is also a defendant, represented Barton. In a meeting on June 29, 1984, and in letters dated July 2 and 3, 1984, the defendants allegedly threatened to drive Marshall–Silver out of business if Barton was not paid for its work. Marshall–Silver refused to comply and in late December 1984 Barton petitioned the bankruptcy court to have Marshall–Silver declared bankrupt. In February 1985, the bankruptcy court dismissed the petition after Barton and other creditors of Marshall–Silver failed to post the necessary bonds.

In its complaint, Marshall–Silver alleged that the defendants filed the bankruptcy petition with knowledge that it was false, included two other creditors in the petition when they knew they were not authorized to do so, and maliciously publicized the filing of the petition to the media falsely asserting that Marshall–Silver was insol-

vania, sitting by designation.

vent. The predicate acts upon which the plaintiff based its RICO claim were the allegedly extortionate threat made at the June 29th meeting, the two follow-up letters of July 2nd and 3rd, the filing of the fraudulent involuntary bankruptcy petition in December of that same year, and the generation of false publicity in connection with that filing. As a result of the filing of the fraudulent bankruptcy petition and attendant publicity, Marshall–Silver claimed that it could not obtain needed construction bonds and was driven out of business. The complaint sought compensatory and punitive damages based on the business losses suffered in this manner.

In our first opinion in this case, we held that plaintiff's allegations did not satisfy what the Supreme Court had identified in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), as the "continuity" component of the pattern requirement. We reasoned that "the target of RICO ... is criminal activity that, because of its organization, duration, and objectives poses, or during its existence posed, a threat of a series of injuries over a significant period of time." *Marshall–Silver*, 835 F.2d at 66–67. Cases like the plaintiff's, which involved "a single victim, a single injury, and a single short-lived scheme with only two active perpetrators," did not pose such a threat and thus did not satisfy the pattern requirement. *Id.* at 67.

■ We now reconsider Marshall–Silver's allegations in light of the Supreme Court's decision in *H.J. Inc. v. Northwestern Bell Telephone Co.*, — U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Since the district court dismissed plaintiff's suit under Rule 12(b)(6), Fed.R.Civ.P., our review is plenary. We must accept as true all well-pleaded allegations of the complaint, and construe them in the light most favorable to the plaintiff; the dismissal may stand only if the plaintiff alleges no set of facts which, if proved, would entitle him or her to relief. *Labov v. Lalley*, 809 F.2d 220, 221–22 (3d Cir.1987).

## II.

In *Barticheck v. Fidelity Union Bank*, 832 F.2d 36 (3d Cir.1987), this court "read the [RICO] legislative history's reference to 'continuity' as simply calling for an inquiry into the extent of the racketeering activity ... [but] decline[d] to adopt a verbal formula for determining when unlawful activity is sufficiently extensive to be continuous." 832 F.2d at 40. We noted our understanding

that the existence of a RICO pattern does not turn on the abstract characterization of racketeering acts as "continuous" and "related" but rather on a combination of specific factors such as the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity.[1]

*Id.* at 38–39. *Barticheck* also rejected the defendant's attempt to cabin the definition of pattern by requiring that a plaintiff prove the defendant's involvement in more than one illicit "scheme." We reasoned that nothing in RICO or its legislative his-

---

1. The precise issue in this case is whether the plaintiff's allegations satisfy the "continuity" component of the pattern requirement. Beginning with *Sedima*, 473 U.S. at 479, 105 S.Ct. at 3275, the Supreme Court has divided the "pattern" requirement into two sub-requirements: "relatedness" and "continuity." Relatedness merely requires that the "criminal acts ... have the same or similar methods or purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 109 S.Ct. at 2901. Because Marshall–Silver's allegations regarding the single purpose of the predicate act satisfy the defi-

nition of relatedness, only the continuity sub-requirement remains at issue.

The list of factors enumerated in *Barticheck* was not divided into those facts suggestive of relatedness and those suggestive of continuity. The only factor in the list that clearly goes to relatedness, however, is the similarity of the criminal acts. All other factors—the number of unlawful acts, the length of time over which the acts were committed, the number of victims, the number of perpetrators, and the character of the unlawful activity—remain, in greater and lesser degrees, relevant to the issue of continuity.

tory suggested that Congress had intended to so limit the statute; instead we relied on our sense of the "ordinary understanding" of term pattern. *Id.* at 39.

We applied the *Barticheck* analysis when this case was first before us. *Marshall–Silver,* 835 F.2d at 66–67. We concluded that the target of RICO, with its augmented penalties and treble damages, was criminal activity that poses "a threat of a series of injuries over a significant period of time" and thus that "continuity" was not present when the alleged wrongdoing involved only "a single victim, a single injury, and a single short-lived scheme with only two active participants." *Id.* at 67.

Following our first opinion in this case, the Supreme Court held in *H.J. Inc.,* 109 S.Ct. at 2893, that RICO's pattern requirement does not require the existence of more than one "scheme." *Id.* at 2901. In the course of so holding, the Court stressed that Congress had a "natural and common sense approach to RICO's pattern element in mind", *id.* at 2899, and that the "limits of the relationship and continuity concepts that combine to define a RICO pattern, and the precise methods by which relatedness and continuity or its threats may be proved, cannot be fixed in advance...." *Id.* at 2902. These observations and the holding of the Court in *H.J. Inc.* are entirely consistent with our approach in *Barticheck* and our prior opinion in this case.

As we noted in *Swistock v. Jones,* 884 F.2d 755 (3d Cir.1989), however, *H.J. Inc.* includes some additional teachings that arguably require adjustment in our prior approach to the concept of "continuity."

Continuity, the Court indicated, is "centrally a temporal concept" which reflects Congress's intent to limit RICO's application to "long-term criminal conduct." 109 S.Ct. at 2902. Accordingly, the existence of continuity must be demonstrated either by a showing that "the predicates themselves amount to ... [long-term] *continuing* racketeering activity" or by proof that those predicates "otherwise constitute a threat of [long-term] *continuing* racketeering activity." *Id.* at 2901. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement." *Id.* at 2902. While the existence of multiple schemes is not a prerequisite to a finding of continuity, the Court noted that it can be highly relevant to whether the requisite "continuity" exists. *Id.* at 2901.

*H.J. Inc.* can be read to suggest that "continuity" is *solely* a "temporal concept" and that inquiry into the *extent* of the criminal activity (e.g., the number of victims, the number of schemes, etc.) is relevant only as it bears on the duration or threatened duration of the repeated criminal conduct. Under this reading, whether the objective of the conduct was to inflict a single injury or a series of injuries would be without consequence so long as the actual or threatened conduct is of substantial duration.

Without more explicit guidance from the Supreme Court we are reluctant to embrace this reading of *H.J. Inc.*[2] The concept of "continuity" plays an important constraining role in the operation of the RICO statute.[3] If the extent of the threat-

**2.** Other courts of appeals have exhibited a similar reluctance to adopt this interpretation of *H.J. Inc. See Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.,* 883 F.2d 48 (7th Cir.1989) (affirming summary dismissal of RICO claim involving a single injury); *Sutherland v. O'Malley,* 882 F.2d 1196 (7th Cir.1989) (same); *Menasco, Inc. v. Wasserman,* 886 F.2d 681 (4th Cir.1989) (stressing limited extent of injury).

**3.** *See Menasco, Inc. v. Wasserman,* 886 F.2d 681, 683 (4th Cir.1989):

The "pattern" requirement is more than incidental to the operation of the RICO statute. In providing a remedy of treble damages for

injury "by reason of a violation of" RICO's substantive provisions, 18 U.S.C. § 1964(c), Congress contemplated that only a party engaging in widespread fraud would be subject to such serious consequences. *See* S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969) U.S.Code Cong. & Admin.News ("One isolated 'racketeering activity' was thought insufficient to trigger the remedies provided under the proposed chapter, largely because the net would be too large and the remedies disproportionate to the gravity of the offense."); 116 Cong. Rec. 35193 (1970) (RICO "not aimed at isolated offender") (statement of Rep. Poff). The pattern requirement in § 1961(5) thus acts to ensure that RICO's extraordinary remedy does

ened societal injury is deemed irrelevant and we are to focus solely on the period of time over which the predicate acts occurred or the period during which any threatened criminal activity would be likely to last, "continuity" will be present in criminal conduct that clearly does not pose a societal threat worthy of the draconian penalties and remedies available under RICO. Virtually every garden-variety fraud is accomplished through a series of wire or mail fraud acts that are "related" by purpose and are spread over a period of at least several months. Where such a fraudulent scheme inflicts or threatens only a single injury, we continue to doubt that Congress intended to make the availability of treble damages and augmented criminal sanctions dependant solely on whether the fraudulent scheme is well enough conceived to enjoy prompt success or requires pursuit for an extended period of time. Given its "natural and common sense approach to RICO's pattern element," we think it unlikely that Congress intended RICO to apply in the absence of a more significant societal threat. Moreover, if the Court in *H.J. Inc.* intended that the *duration* of the predicate acts or the threat arising therefrom should be determinative without reference to whether the societal threat was limited to a single, one time injury, we would not have expected the Court to eschew providing a specific standard in favor of a fact oriented, case-by-case development.

■ Fortunately, we are not required to resolve this important issue in order to decide the case before us. As in *Swistock*, the "vitality [of] the single … injury approach … after *H.J. Inc.* [is an issue that will have to] await … further case development." 884 F.2d at 758. The complaint in this case alleges that the defendants, on three occasions over a five day period, threatened to put the plaintiff out of business if Barton was not paid for specific construction work it had performed. When the debt remained unpaid several months later, the defendants successfully carried

out their threat by filing a fraudulent bankruptcy petition and generating media publicity conveying the message that plaintiff was insolvent. On these facts, the alleged illegal activity posed no threat of *additional* repeated criminal conduct over a significant period. Moreover, the predicate acts themselves were concluded in less than seven months. Even if we were to read *H.J. Inc.* as defining "continuity" solely in terms of the duration of the predicate acts or the duration of the future criminal activity that they threaten, we would be required to affirm the judgment of the district court. This is one of those cases expressly resolved by *H.J. Inc.*, when the Court observed:

> Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement: Congress was concerned in RICO with long-term criminal conduct.

109 S.Ct. at 2901.

Our conclusion is consistent with our holding in *Swistock v. Jones*, 884 F.2d at 755. There, the plaintiff alleged that (1) the predicate acts occurred over a span of more than a year, (2) the scheme lasted over two years, and (3) the defendant's wrongdoing was part of a continuing business practice of such behavior that posed a threat to others. Not only was the scheme in *Swistock* in existence for a much longer time, but also there was a threat of a repetition of criminal conduct in the future. The situation that we faced in *Swistock* was thus not unlike that examined by the Supreme Court in *H.J. Inc:*

> Petitioner claims that the racketeering predicates occurred with some frequency over at least a 6–year period, which may be sufficient to satisfy the continuity requirement. Alternatively, a threat of continuity of racketeering activity might be established at trial by showing that the alleged bribes were a regular way of conducting Northwestern Bell's ongoing

not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value; and that

the multiple state and federal laws bearing on transactions such as this one are not eclipsed or preempted.

business, or a regular way of conducting or participating in the conduct of the alleged and ongoing RICO enterprise, the MPUC.

The Court of Appeals thus erred in affirming the District Court's dismissal of petitioners' complaint for failure to plead "a pattern of racketeering activity."

*Id.* 109 S.Ct. at 2906. Based on this conclusion, we reversed the district court's dismissal of the complaint in *Swistock*.

### III.

Because the allegations of the complaint in this case reflect neither "long-term" criminal conduct nor the threat thereof, the judgment of the district court will be affirmed.