**Gary E. HINDES, Appellant,**

**v.**

**Michael N. CASTLE; Friends of Mike Castle; Dale E. Wolf; Committee to Elect Dale Wolf; William E. Manning; Bruce E. Winn; Carl Hostetter; John C. Sargent, and Michael E. Harkins.**

No. 90–3528.

United States Court of Appeals, Third Circuit.

Argued Jan. 28, 1991.

Decided June 28, 1991.

for any injury other than that caused by the Sparine injection.

Joseph A. Rosenthal, Morris, Rosenthal, Monhait & Gross, Wilmington, Del., Berl Bernhard and James F. Hibey, Richard H. Saltsman (argued), Verner, Liipfert, Bern-

hard, McPherson & Hand, Washington, D.C., for appellant.

E. Norman Veasey (argued), R. Franklin Balotti, John A. Parkins, Jr., Robert J. Kriner, Jr. and David L. Zicherman, Richards, Layton & Finger, Wilmington, Del., for appellees.

Before SLOVITER, Chief Judge,[*] NYGAARD, Circuit Judge, and KATZ, District Judge.[**]

## OPINION OF THE COURT

SLOVITER, Chief Judge.

Gary Hindes appeals from the district court's order 740 F.Supp. 327, dismissing his complaint for failure to state a valid claim under RICO, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1988). Hindes was the unsuccessful Democratic candidate for Lieutenant Governor of Delaware in 1988. He brought this suit against Dale Wolf and Michael Castle, the successful Republican candidates for Lieutenant Governor and Governor respectively, as well as their separate campaign committees and several individuals associated with them.

The district court dismissed the complaint for failing to allege the requisite "pattern of racketeering activity." On appeal, Hindes argues that the court erred in determining that there was no threat of continuing criminal activity. He also argues that even if there was no future threat, the court's pattern inquiry was improper because it considered only the length of the criminal scheme while ignoring its breadth as evidenced by the number of victims, the number of perpetrators and the number of alleged acts of mail fraud. We have jurisdiction over this appeal under 28 U.S.C. § 1291.

## I.

### Facts and Procedural History

Because the complaint was dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), we must assume as true all well pleaded allegations in Hindes' complaint. *See Swistock v. Jones*, 884 F.2d 755, 756 (3d Cir.1989). In essence, the complaint charges a conspiracy and scheme to solicit contributions earmarked for Castle's campaign and to funnel a substantial portion of them to Wolf's campaign for Lieutenant Governor, with the result that Hindes, Wolf's opponent, was required to spend some $350,000 more than he would otherwise have spent.

We focus in particular on the allegation of duration of the alleged scheme. The complaint alleges that Castle announced his intention to seek reelection as Governor of Delaware in January 1988, using a previously formed political committee, the Friends of Mike Castle, to solicit contributions and otherwise coordinate campaign activities. Wolf announced his candidacy for Lieutenant Governor on February 3, 1988, and formed the Committee to Elect Dale Wolf several days later. Defendants Carl Hostetter and Michael Harkins were associated with the Castle Committee, and defendant John Sargent was associated with the Wolf Committee. On March 20, 1988, Hindes, a Democrat, entered the race challenging Wolf for the office of Lieutenant Governor.

Delaware law provides for the separate election of Governor and Lieutenant Governor. The complaint alleges that in April 1988, Castle and Wolf decided to run as a team and coordinated their fundraising activities and political advertisements. They maintained separate campaign committees, but shared a campaign chairman, defendant Bruce Winn, and a campaign manager, defendant Michael Harkins.

The crux of the complaint is that the defendants devised and implemented a scheme in which the politically well-known and popular incumbent Castle used the mails to solicit political contributions for his gubernatorial campaign while intending to use a substantial portion of the money to

---

[*] Hon. Dolores K. Sloviter became Chief Judge on February 1, 1991.

[**] Hon. Marvin Katz, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

pay for the costs of the Wolf campaign. The complaint identifies two solicitations: the first a mass mailing on February 26, 1988 by the Castle Committee to "thousands of individuals" soliciting contributions to the Castle campaign, and the second a mass mailing in July 1988, soliciting contributions to both campaigns, which "specifically instructed contributors to make checks payable either to the Castle Committee or to the Wolf Committee depending upon which candidate they wished to support." Complaint ¶ at 22.

Hindes claims that implicit in the language in the July solicitation was the representation that contributions to the Castle Committee would be used for the Castle campaign and that the defendants intended and did subsidize the Wolf campaign by paying a disproportionate share of joint expenses for joint radio and television advertisements which ran from April 22 to November 1988 in Delaware, Maryland and Pennsylvania.

Hindes filed this action after Wolf was elected Lieutenant Governor. The complaint alleges that defendants used or invested money derived from racketeering activity in the Wolf Committee (the RICO enterprise) in violation of 18 U.S.C. § 1962(a). It also alleges that defendants violated 18 U.S.C. § 1962(b), (c)[1] and (d), which prohibit, respectively, the control of an enterprise through racketeering activity, the operation of an enterprise through racketeering activity, and conspiring to violate 18 U.S.C. § 1962(a), (b) or (c). The RICO counts were predicated upon the mailings sent by the Castle Committee to potential contributors which allegedly violated the mail fraud statute, 18 U.S.C. § 1341 (1988).[2]

Defendants moved for dismissal. After briefing and oral argument the district court granted defendant's motion to dismiss, finding that the predicate acts alleged in the complaint did not constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1962(a)–(d). The court determined that, at most, the complaint alleges an eight-month period of racketeering activity, and that because there was no threat of continuing fraudulent activity occurring in the future, the allegations did not constitute "the type of long-term criminal activity necessary to satisfy the continuity prong of the [RICO] pattern requirement." App. at 24. In addition to the absence of continuity, the district court noted that dismissal was warranted because it would be inappropriate to allow Hindes to "utilize the federal courts to obtain monetary damages for losses incurred as a result of alleged irregularities in a state election." App. at 27.

## II.

### *Discussion*

#### A.

It is important at the outset to explain what we are not considering. We do not find it necessary to address whether RICO extends to the activity of a political campaign. Similarly, we do not reach the issue whether campaign losses by an unsuccessful candidate are the type of injury RICO seeks to redress. Finally, because our disposition is directed to the RICO pattern requirement, we need not decide whether the predicate offense of mail fraud has or could be pled from these facts. We assume, without deciding, that the complaint adequately alleges defendants used the United States mail to further a "scheme or

---

**1.** All of the defendants are alleged to have been either employed by or associated with the Wolf Committee; the complaint does not assert a § 1962(c) claim against the Wolf Committee (the enterprise), and thus, as required, all the persons are distinct from the enterprise. *See B.F. Hirsch v. Enright Refining Co.,* 751 F.2d 628 (3d Cir.1984).

**2.** The complaint also alleged that the fundraising scheme violated Del.Code Ann. tit. 15,

§ 8004(a) and (e) (1981) (repealed 1991), which limit campaign contributions to $1,000. However, after the complaint was filed, the Delaware Attorney General issued an opinion which stated that the alleged practices did not violate Delaware law. On appeal, Hindes' RICO theory focuses on the predicate acts of mail fraud. The issue of whether the mailings were fraudulent is separate from whether the Delaware campaign financing law was violated.

artifice to defraud" in violation of 18 U.S.C. § 1341.

### B.

The principal issue raised in this appeal is whether Hindes sufficiently alleged a pattern of racketeering activity for RICO purposes. The RICO statute provides little explicit guidance in that respect beyond the provision that a " 'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5).

 Thus, it has been left for judicial decisions, and particularly the Supreme Court's decision in *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), to set forth the framework for assessing whether predicate acts establish "a pattern of racketeering activity." To be considered a "pattern," predicate criminal acts must be related and "amount to, or ... otherwise constitute a threat of, *continuing* criminal activity." *Id.* at 240, 109 S.Ct. at 2901 (emphasis in original); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). Predicate acts are sufficiently related when they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 492 U.S. at 240, 109 S.Ct. at 2901 (*quoting* Dangerous Special Offender Sentencing Act, 18 U.S.C. § 3575(e) (1982), *repealed by* Sentencing Reform Act of 1984, Pub.L. No. 98–473, tit. II, § 212(a)(2), 98 Stat.1987).

 The Court characterized the other prong of a pattern, "continuity," as being "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902. Continuity over a closed period of time may be demonstrated by "proving a series of related predicates extending over a substantial period of time." *Id.* at 242, 109 S.Ct. at 2902. Related predicate acts lasting "a few weeks or months and threat-

ening no future criminal conduct do not satisfy this requirement." *Id.*

The Court recognized that a RICO action may be brought before continuity can be established by demonstrating repeated criminal activity over a substantial period of time. In such a case, the Court said, RICO liability "depends on whether the *threat* of continuity is demonstrated." *Id.* (emphasis in original). The Court gave several examples of how the threat of continuing criminal activity may be demonstrated. In some cases, the threat will be made explicitly, as in the case of a hoodlum who threatens to break the windows of neighborhood storeowners unless they pay him monthly "insurance premiums". *Id.* at 242, 109 S.Ct. at 2902. In other cases, threatened criminal conduct could be established by a showing that the conduct was an "ongoing entity's regular way of doing business," whether "a long-term association that exists for criminal purposes" or the regular way a legitimate business conducts its affairs. *Id.* at 242–43, 109 S.Ct. at 2902.

The *H.J. Inc.* Court applied these guidelines to the facts before it and held that plaintiffs' complaint sufficiently pleaded a RICO pattern. The predicate acts of bribery by a telephone company to members of a state public utilities commission to approve unfair and unreasonable rates, if established, would meet the relatedness requirement because they had a common purpose. Plaintiffs could meet the continuity requirement in one of two ways, by the demonstration of a six-year period of bribery sufficient to establish a closed period of predicate acts extending over a substantial period of time, or, alternatively, by a demonstration that the alleged bribes "were a regular way" of business, thereby establishing a threat of racketeering activity. *Id.* at 250, 109 S.Ct. at 2906.

 Hindes argues that notwithstanding the emphasis of duration in *H.J. Inc.*, the district court erred as a matter of law in failing to evaluate the allegations of pattern in light of the multi-factor test adopted by this court in *Barticheck v. Fidelity Union Bank*, 832 F.2d 36 (3d Cir.

1987). In that case, we held the district court must evaluate the pattern requirement in light of: 1) the number of unlawful acts; 2) the length of time over which the acts were committed; 3) the similarity of the acts; 4) the number of victims; 5) the number of perpetrators; and 6) the character of the unlawful activity. *Id.* at 39.

*Barticheck,* of course, must be viewed in light of the Supreme Court's subsequent decision in *H.J. Inc. Barticheck* was cited approvingly in *H.J. Inc.,* not for the multifactor test but for the proposition that continuity is both a closed- and open-ended concept. 492 U.S. at 241, 109 S.Ct. at 2901. As we have explained in our subsequent cases, "After *H.J. Inc.,* we must focus on [the *Barticheck* ] factors as they bear upon the separate questions of continuity and relatedness." *Banks v. Wolk,* 918 F.2d 418, 423 (3d Cir.1990); *see also Marshall–Silver Constr. Co. v. Mendel,* 894 F.2d 593, 595 n. 1 (3d Cir.1990) (all of the *Barticheck* factors, except the similarity of the acts, "remain, in greater and lesser degrees, relevant to the issue of continuity").³ The post-*H.J. Inc.* cases decided by this court which have focused on pattern all make clear that duration is the *sine qua non* of continuity. While it is not in itself sufficient to establish a pattern, a determination that must be made in light of all the *Barticheck* factors, no pattern can be shown without the required duration.⁴

In *Marshall–Silver Constr. Co. v. Mendel,* 894 F.2d 593 (3d Cir.1990), there were allegations of acts of mail fraud and extortion spanning seven months related to a scheme to force a single business entity bankrupt. We affirmed the district court's dismissal of the complaint after determining that "the allegations of the complaint

... reflect neither 'long-term' criminal conduct nor the threat thereof." *Id.* at 598.

In *Banks v. Wolk,* 918 F.2d 418 (3d Cir. 1990), the complaint alleged RICO claims against Wolk and Weiner based on alleged fraudulent statements made in furtherance of a scheme to defraud Banks out of his interest in a single piece of real estate. After determining that the injury to Banks occurred during an eight-month period and that there was no "indication of possible future misconduct by Wolk or Weiner," *id.* at 423, we dismissed the RICO claims against Wolk and Weiner. *See also Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1418 (3d Cir.) (fraudulent misrepresentations lasting over an eight-month period undertaken in order to defraud a single entity and threatening no future criminal activity failed to satisfy continuity requirement), *cert. denied,* —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

In the only post-*H.J. Inc.* cases in which we found the continuity requirement to be satisfied, there was the threat of continuing RICO activity. The complaint in *Swistock v. Jones,* 884 F.2d 755 (3d Cir.1989), contained allegations of mail fraud related to a real estate transaction. Although the predicate acts lasted approximately one year, the complaint also contained allegations of further "misrepresentations that defendants allegedly made in regard to other potential transactions." *Id.* at 759. We said that these further allegations were sufficient to raise the issue of whether fraud was the defendant's regular way of doing business. In *Banks v. Wolk,* we held that allegations of multiple fraudulent real estate schemes undertaken by the Cohen brothers demonstrated that fraud was their

---

3. For example, the *Barticheck* factors, such as the number of acts, victims, and perpetrators and the character of the unlawful activity, may be relevant in some cases in assessing the threat of continuing criminal conduct by throwing light on whether the illegal activity was part of a legitimate business' regular way of conducting business, or whether the predicates were attributable to a "long-term association that exists for criminal purposes." *H.J. Inc.,* 492 U.S. at 243, 109 S.Ct. at 2902.

4. The holding in *H.J. Inc.* was that the Eighth Circuit had erred in holding that predicate acts which constitute part of a single scheme or episode can never constitute a pattern. Hindes argues that the district court's focus on duration ignored the *H.J. Inc.* Court's statement of the need for a "flexible approach." However, the precise issue to which the flexibility language in *H.J. Inc.* was directed was the multiple scheme test. Nothing in that portion of the opinion derogates from the Court's statement that continuity is "centrally a temporal concept." 492 U.S. at 242, 109 S.Ct. at 2902.

regular way of doing business. "As a consequence, a threat of continuing criminal behavior is present." *Banks*, 918 F.2d at 424.

The initial focus on duration as central to the continuity prong of a pattern of racketeering is impelled by the observation in *H.J. Inc.* that "Congress was concerned in RICO with long-term criminal conduct," as distinguished from acts "extending over a few weeks or months and threatening no future conduct." 492 U.S. at 242, 109 S.Ct. at 2902. Although RICO has not been limited to organized crime activity, we must not overlook that it was occasioned by Congress' perception of the danger posed by organized crime-type offenses, which are almost by definition continuing. Thus, we examine the allegations of Hindes' complaint and the reasonable inferences therefrom to determine whether the duration requirement is satisfied.

■ Although the complaint contains allegations of only two mass mailings, occurring four months apart, we will assume, as did the district court, that the scheme lasted for a period of eight months, from the first mailing in February until the election of Wolf in November 1988. The district court held that because "the sole objective of the alleged fraudulent scheme was to elect Dale Wolf as Lieutenant Governor" and "[t]hat goal was accomplished in November of 1988 ..., there ceases to be a threat of continued racketeering activity."

Hindes argues that the court failed to give him all reasonable inferences in considering the threat of continuing criminal activity and that the threat of recurring criminal conduct by the defendants can reasonably be inferred from the "very nature" of the mail fraud scheme and the fact that Delaware holds state elections every two years. Brief of Appellant at 31. However, the "very nature" of the alleged scheme was the solicitation of funds by the Castle Committee, successful because of Castle's popularity, with the intent and subsequent use of these funds to benefit Wolf, Hindes' opponent. Thus, even though the Wolf Committee continues to exist, as Hindes stresses, Wolf's continued interest in election for the office could not threaten future

funneling of campaign contributions from Castle's campaign to Wolf's campaign—the fraudulent scheme alleged—because Castle is precluded by Delaware law from running for a third term as Governor. Castle is serving his second term as Governor and Delaware has a two-term limit for Governor. Nor does the fact that both Castle and Wolf remain active in Delaware politics support an inference of a future threat. The nature of the fraudulent scheme alleged depends on their running as a team with a symbiotic relationship.

There is no allegation that in any other respect mail fraud was the Castle Committee's regular way of conducting business. *See H.J. Inc.*, 492 U.S. at 243, 109 S.Ct. at 2902. Although Hindes vigorously argues that we should infer from the two alleged fraudulent mass mailings identified in Hindes' complaint that this was a regular way of conducting business, the "way of business" at issue was limited to the joint candidacy of Castle and Wolf.

We are cognizant that *H.J. Inc.'s* list of methods for establishing a threat of continuity was not intended to be exhaustive. *See id.* at 242, 109 S.Ct. at 2902 ("Without making any claim to cover the field of possibilities—preferring to deal with the issue in the context of concrete factual situations presented for decision—we offer some examples of how [continuity] might be satisfied."). However, in this case because the fraudulent solicitation of contributions ended with the election of Wolf in November 1988, and the alleged purpose of the scheme was achieved with the election of Wolf, the district court properly determined that there existed no threat of continuing racketeering activity.

### C.

Hindes argues that in any event the period of time alleged was sufficient and that the district court's holding, after it determined that there was no threat of continuing criminal activity, that a closed eight-month period of mail fraud "was not of sufficient duration to be considered a pattern," App. at 22, was erroneous. He contends that when the extent of the racke-

teering activity is measured by the *Barti-check* factors, a sufficient pattern has been alleged.

■ As we noted above, the *Barticheck* decision remains relevant to the pattern inquiry. *See Banks v. Wolk*, 918 F.2d at 423. However, unless these factors indicate a threat of continuing long-term racketeering activity occurring over a period of time, continuity depends on the actual duration of the predicates. Where, as in this case, there is no threat of continuing racketeering activity in the future, RICO requires a showing of "predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902. A large number of victims, acts, or perpetrators cannot substitute for this demonstration of "long-term criminal conduct." *Id.*

This court has explicitly held that predicates lasting over a comparable period of time with no threat of repetition do not satisfy continuity. *See Marshall–Silver*, 894 F.2d at 597 (complaint alleging predicates lasting seven months "is one of those cases expressly resolved by *H.J. Inc.*, when the court observed: 'Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement.'" (*citing H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902)); *see also Banks*, 918 F.2d at 422–23 (eight-month period of predicates without a threat of continuing activity is insufficient); *Kehr Packages*, 926 F.2d at 1413 (same).

We recognize the understandable desire of counsel and litigants for a litmus test by which duration can be measured, but we continue to decline to provide one. Certainly we will not hold that although eight months is not enough, a year is. We do not believe that temporality can be so finely etched. It is sufficient for our holding that the closed-end duration of this scheme was not long enough to constitute a pattern to note that the period here was analogous to that pled in *Marshall–Silver* and *Banks*, where we found insufficient continuity.

We observe that not one of our post-*H.J. Inc.* cases has found continuity satisfied by the duration of the predicate acts alone. In every case there were allegations of a threat of future continuing racketeering activity. Other courts have found continuity in a closed period, but those periods of time were substantially longer than the eight-month period of time in this case. *See, e.g., Fleet Credit Corp. v. Sion*, 893 F.2d 441, 447 (1st Cir.1990) (95 fraudulent mailings sent over a four and one-half year period is "the type of 'long term criminal conduct' defined by the *H.J.* Court as constituting 'continued criminal activity' "); *Walk v. Baltimore and Ohio R.R.*, 890 F.2d 688, 690 (4th Cir.1989) (holding that "[i]n light of *H.J. Inc.'s* special emphasis [on] the sheer duration of criminal activity ..., we conclude that activity continuing, as here alleged, for a period of ten years, must be considered to have 'extended over a substantial period of time,' hence to constitute long-term conduct meeting the pattern requirement") (quoting *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902); *Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir.1989) (predicates extending over an unspecified "matter of years" satisfied continuity requirement of *H.J. Inc.*); *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio*, 900 F.2d 882, 887 (6th Cir. 1990) ("[A]llegations of fraud occurring for a period of seventeen years, along with the specific mailings evidencing such a scheme, are sufficient to state a claim of a pattern of racketeering activity.").

It remains an open question whether RICO liability is ever appropriate for a single-scheme, single-victim conduct threatening no future harm. In *Marshall–Silver*, we questioned whether "*duration* of the predicate acts or the threat arising therefrom should be determinative without reference to whether the societal threat was limited to a single one time injury." 894 F.2d at 597;[5] *see also Banks*, 918 F.2d at 422; *Kehr Packages*, 926 F.2d at 1418.

Even if it is ultimately decided that consideration of the extent of the societal inju-

---

5. This issue was not resolved by *Marshall–Silver*. "The 'vitality [of] the single ... injury approach ... after *H.J. Inc.* [is an issue that will have to] await ... further case development.'" 894 F.2d at 597 (*citing Swistock*, 884 F.2d at 758).

ry is necessary in cases of single-injury, single-scheme conduct, that would add to rather than detract, as Hindes believes, from the requirement that a RICO plaintiff must demonstrate long-term criminal conduct or its threat.

## III.

### *Conclusion*

Until the Supreme Court further clarifies the RICO requirements or Congress takes some action to throw more light on the elements of the claim, this court can only add to its prior body of law in this connection incrementally. Today, we seek to make clear the fundamental nexus between duration and the continuity prong of the pattern requirement. Because the scheme as alleged in Hindes' complaint contained no allegations of the threat of continuing criminal activity and did not by its nature permit amendments to that effect and because the predicate acts were not in any respect close to the duration required to show a pattern, we will affirm the district court's dismissal of the complaint.