**GRAND CENTRAL SANITATION, INC., et al., Plaintiffs,**

v.

**FIRST NATIONAL BANK OF PALMERTON, et al., Defendants.**

Civ. No. 90–0533.

United States District Court, M.D. Pennsylvania.

March 16, 1992.

Leonard N. Zito, Anthony J. Martino, Zito, Martino & Karsasek, Bangor, PA, Mark E. Cedrone, Teresa N. Cavenagh, Ronald F. Kidd, Duane, Morris & Heckscher, Joseph D. Mancano, Britt, Hankins, Schaible & Moughan, Philadelphia, PA, for plaintiffs.

George C. Werner, Jr., Scott H. Spencer, Barley, Snyder, Cooper & Barber, Lancaster, PA, for defendants.

Leonard N. Zito, Anthony J. Martino, Zito, Martino & Karsasek, Bangor, PA, for intervenors.

## MEMORANDUM

KOSIK, District Judge.

Before the court are cross motions for summary judgment filed by the parties in the above-captioned action. For the reasons which follow, the motion for summary judg-

ment filed by the defendants will be granted and the motion for summary judgment filed by the plaintiffs will be denied.

Plaintiffs' verified complaint was filed on March 15, 1990. The basis of plaintiffs' action is alleged violations of the Racketeer Influenced and Corrupt Organizations Act [hereinafter "RICO"], 18 U.S.C. § 1961, *et seq.* An answer to the complaint raising affirmative defenses was filed by defendants on August 13, 1990. Defendants filed a motion for summary judgment on September 13, 1991. A brief in support of the motion was filed on September 20, 1991. Plaintiffs' response to the motion for summary judgment was filed on September 30, 1991. A brief in opposition to the motion was filed on October 4, 1991.[1] On October 7, 1991, plaintiffs filed a cross motion for summary judgment. Defendants' reply brief in support of the motion for summary judgment was filed on October 21, 1991.

*Background*

The plaintiffs in the instant action were minority shareholders of the First National Bank of Palmerton [hereinafter "Palmerton Bank"]. Sometime prior to November 10, 1982, defendants Salvatore Checho, Anna Marie Checho, Anna Capobianco, Raymond C. Rinaldi, Frank Horwith, Harrison S. Gruber, and Franklin D. Logenbach [hereinafter "Individual Defendants"] formed Palm Bancorp, a bank holding company, for the purpose of acquiring and holding most, if not all, of Palmerton Bank's stock. The Individual Defendants are all officers and/or directors of Palmerton Bank and Palm Bancorp. On November 10, 1982, as a result of a tender offer, Palm Bancorp acquired approximately 90% of the outstanding stock of Palmerton Bank.

On January 15, 1990, Palmerton Bank mailed out to the plaintiffs a "Notice of Special Shareholders Meeting" announcing that a meeting would be held on January 30, 1990 to consider and vote on an Agreement to Reorganize and Consolidate Palmerton Bank. The Agreement was approved by a majority of the Palmerton Bank's board of directors,

---

1. Plaintiffs also filed a motion to deny and dismiss defendants' motion for summary judgment as untimely. [Document 42]. We will deny the

motion to deny and dismiss defendants' motion for summary judgment and we will address the merits of defendants' motion.

i.e., the Individual Defendants. In order to effectuate the reorganization of Palmerton Bank, defendant New First National Bank of Palmerton [hereinafter "New Palmerton Bank"] was formed. The exchange rate on the stock was $1,000.00 per share, which was below book value.

As a result of the above transactions, the plaintiffs allege a scheme to defraud the plaintiff minority shareholders and Palmerton Bank of money and other assets, beginning in 1982 and continuing through 1990. A portion of this scheme involved the diversion of Palmerton Bank income to the defendants through the payment of consulting fees, excessive salaries and personal expenses. In addition, defendants Salvatore Checho, Anna Marie Checho and Anna Capobianco allegedly used Palmerton Bank maintenance personnel for personal domestic services. The defendants allegedly failed to disclose and intentionally concealed the payments of the fees and expenses and the personal use of Palmerton Bank personnel. The plaintiffs allege that Palmerton Bank paid little or no dividends since 1982 and that the majority shareholders were attempting to obtain Palmerton Bank income in lieu of declaring dividends because any declared dividend would also have to be paid to the minority shareholders.

As indicated above, the plaintiffs allege that the defendants perpetrated a scheme to defraud them through the reorganization of Palmerton Bank by squeezing out the minority shareholders at a price far below fair market value. The scheme involved the intentional failure to pay dividends or the payment of minimal dividends from 1982 to 1989 in an effort to gradually decrease the value of Palmerton Bank stock. Furthermore, the defendants failed to inform the minority shareholders of outside offers to purchase Palmerton Bank stock at prices in excess of book value.

The plaintiffs allege that the defendants used the United States Postal Service and the interstate wires in furtherance of these schemes to defraud, including the mailing of false and fraudulent Palmerton Bank financial statements from 1982 to 1989, the mailing of consulting fees, and the mailing of the information statement and telephone calls made concerning the reorganization.

*Discussion*

Summary judgment is appropriate only when there is no genuine issue of material fact to be resolved. Fed.R.Civ.P. 56; *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir.1982); *Continental Insurance v. Bodie,* 682 F.2d 436 (3d Cir.1982). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. The entire record must be examined in the light most favorable to the non-moving party. *Continental Insurance, supra.* Additionally, the Supreme Court has ruled that Fed.R.Civ.P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), *cert. denied* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). The Court further stated that "Rule 56(e) ... requires the non-moving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* 477 U.S. at 324, 106 S.Ct. at 2553.

In their motion for summary judgment the defendants argue that the complaint, in effect, raises three schemes to defraud: [1] various payments of allegedly improper compensation and personal benefits to certain individuals, [2] concealing the payment of allegedly improper consulting fees to Palm Bancorp, and [3] the allegedly improper reorganization of Palmerton Bank. Defendants argue that following the completion of discovery, there does not exist any significantly probative evidence to establish that the defendants engaged in the fraudulent schemes alleged in the complaint. We will review the briefs and documentation filed by the parties to determine if the defendants are correct in their assertion that the plaintiffs have failed to establish the existence of a RICO action.

Counts I and III of plaintiffs' complaint allege a violation of 18 U.S.C. § 1962(c). Counts II and IV allege a RICO conspiracy, 18 U.S.C. § 1962(d). Count V alleges a violation of 18 U.S.C. § 1962(a) and Count VI alleges a RICO conspiracy violation, 18 U.S.C. § 1962(d).

■ 18 U.S.C. § 1962(c) provides as follows: "(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Thus, the four elements necessary to make out a claim under 18 U.S.C. § 1962(c) are: [1] the existence of an enterprise affecting interstate commerce; [2] that the defendant was employed by or associated with the enterprise; [3] that the defendant participated, either directly or indirectly, in the conduct or affairs of the enterprise; and [4] that he or she participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts. *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1165 (3d Cir.1989).

18 U.S.C. § 1962(a) provides, in pertinent part, that:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . .

■ Under 18 U.S.C. § 1962(a) a plaintiff must establish [1] that the defendant has received money from a pattern of racketeering activity; [2] invested that money in an enterprise; and [3] that the enterprise affect-ed interstate commerce. *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1165 (3d Cir.1989).

■ In order to demonstrate a pattern of racketeering activity, the plaintiffs must prove that defendants committed at least two predicate offenses, along with a showing that the racketeering acts are related and that they pose a threat of continued criminal activity. As the United States Supreme Court stated in *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 238, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989):

. . . '[t]he term "pattern" itself requires the showing of a relationship' between the predicates, and of 'the threat of continuing activity.' . . . 'It is this factor of *continuity plus relationship* which combines to produce a pattern.' RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity. [citations omitted].

Further, relationship of the defendant's criminal acts is described as

'criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' *H.J., Inc., supra*, at 240, 109 S.Ct. at 2901.

■ In order to establish a RICO pattern, continuity must also be shown.

'A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.' *H.J., Inc., supra* at 242, 109 S.Ct. at 2902.

The United States Court of Appeals for the Third Circuit has addressed the continuity component in subsequent decisions. In *Banks v. Wolk*, 918 F.2d 418 (3d Cir.1990), a

case involving a real estate scheme, the court examined the actions of all defendants in determining that two of the defendants were involved only in an attempt to defraud a single investor of his interest in a single piece of real estate over a short period of time which amounted to nothing more than an isolated incident of garden variety real estate fraud. As the court held, there was no indication that the AP Building fraud was a regular way of doing business or that it would have continued. As to the remaining defendants, the court found that the allegations indicated that fraudulent behavior was a regular way of doing business.

In *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir.1991), *cert. denied* —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991), the court dealt with alleged misrepresentations made in connection with several business loans. The Court of Appeals held that in assessing whether the defendant's actions amount to or pose a threat of continued criminal activity, it is often helpful to examine the actions which are alleged to form the basis of criminal activity. As the court stated in *Kehr Packages, Inc., supra* at 1414, where the alleged predicate act is mail fraud,[2]

> The mailing element is not very helpful in examining the sufficiency of a RICO pattern allegation. The relatedness test will nearly always be satisfied in cases alleging at least two acts of mail fraud stemming from the same fraudulent transaction—by definition the acts are related to the same "scheme or artifice to defraud." But the continuity test requires us to look beyond the mailings and examine the underlying scheme or artifice. Although the mailing is the actual criminal act, the instances of deceit constituting the underlying fraudulent scheme are more relevant to the continuity analysis.

The court held that in determining the duration of a scheme involving mail fraud, the relevant criminal conduct is the defendant's deceptive or fraudulent activity, rather than otherwise innocent mailings that may continue for a long period of time. Additionally, the court found that the allegations in-

volved a short term attempt to force a single entity into bankruptcy and contained no additional threat of continued criminal activity. Nor did the case involve a long-term association that existed for criminal purposes. Thus, the court concluded that the plaintiffs were unable to maintain a RICO suit.

Finally, in *Hindes v. Castle*, 937 F.2d 868 (3d Cir.1991) and *Hughes v. Consol–Pennsylvania Coal Company*, 945 F.2d 594 (3d Cir. 1991), after discussing its post-*H.J. Inc.* cases, the court discusses its finding of continuity in only two cases, which were of the open-ended kind. That is, they involved a future threat of RICO violations. The court then went on to discuss continuity in the context of a closed-ended scheme in *Hughes v. Consol–Pennsylvania Coal Company, supra* at 611, as follows:

> Because "duration is the sine qua non of continuity" in a closed-ended scheme, the issue then is whether twelve months is a substantial period of time. *Hindes*, 937 F.2d at 873. In *Hindes* we hinted that one year is not a substantial period of time. *Id.* at 875 ["we will not hold that although eight months is not enough (to be a substantial period of time), a year is"]. We hold that twelve months is not a substantial period of time.

> We note that cases finding substantial period, including *H.J. Inc.*, dealt with fraudulent conduct lasting years, sometimes over a decade. Such findings of substantial time periods are consistent with Congress' intent to combat "long-term criminal conduct." *H.J. Inc.*, 492 U.S. at 242 [109 S.Ct. at 2902]. Recently, we noted that "[a]lthough RICO has not been limited to organized crime activity, we must not overlook that it was occasioned by Congress' perception of the danger posed by organized crime-type offenses, which are almost by definition continuing." *Hindes*, 937 F.2d at 874.

With these guidelines in mind, we shall now consider the instant record to determine whether plaintiffs have sufficient evidence to establish a RICO violation.

---

**2.** A similar analysis can be applied to wire fraud.

Count I of plaintiffs' complaint alleges that from 1982 until the present, the defendants devised and participated in schemes to defraud the plaintiffs. In particular, plaintiffs complain that: defendants fraudulently paid consulting fees and other fees to Palm; that defendants paid excessive salaries to the individual defendants and others; that Palmerton Bank paid the Individual Defendants personal expenses and allowed its employees to perform personal services; that illegal dividends were paid to defendant Palm; that plaintiffs were not informed of offers by other banks to purchase Palmerton Bank; and that the reorganization of Palmerton Bank was forced and fraudulent. Plaintiffs contend that these activities were carried out through mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343.[3]

In support of their motion for summary judgment, defendants argue that the plaintiffs have failed to establish the alleged schemes to defraud. In particular, defendants contend that the evidence fails to support plaintiffs' allegations that improper payments were made to any of the Individual Defendants or the improper use of bank personnel; that payment of consulting fees were improper and not disclosed; and that defendants failed to disclose offers to acquire Palmerton Bank. Thus, defendants assert that plaintiffs' case is based on the Reorganization Plan. Defendants rely on the deposition of defendant Salvatore Checho,[4] the audited financial statements for Palmerton Bank for 1986 and 1987,[5] and the January 15, 1990 Information Statement sent to shareholders of Palmerton Bank in connection with the Reorganization Plan.[6]

In opposition to the defendants' motion for summary judgment, the plaintiffs filed an affidavit of Rosina Perin Popovice,[7] and an affidavit of Anthony J. Martino, Esquire, with attached exhibits.[8] The affidavit of Rosina Perin Popovice indicates that she is a director and shareholder for Grand Central

Sanitation, Inc. and that she is aware of Grand Central Sanitation's attempt to register 290 shares of stock purchased from the Estate of Grace A. Teter. She also outlines the conduct of defendants of which Grand Central Sanitation was allegedly unaware and the damage sustained as a result thereof. In particular, she admits receiving the annual information statements regarding Palmerton Bank; however, she states that neither she nor other shareholders of Grand Central were aware of the consulting fees, nor did they receive any benefits from them.

The deposition of Salvatore Checho [Document 40, Exhibit A] indicates that Palm Bancorp was organized in 1982 for the purpose of affording better tax benefits to the banking organization and more organizational flexibility. [N.T. 7]. All of the directors of Palmerton Bank were involved in the formulation and organization of Palm Bancorp. [N.T. 7]. In organizing Palm Bancorp, a Texas law firm, which was considered an expert in holding company formations, was consulted. [N.T. 9]. In 1989, the New Palmerton Bank was organized as an interim bank used as a vehicle to do an interim bank merger of the New Palmerton Bank and Palmerton Bank. [N.T. 9–10]. It was used in order to have the holding company eventually acquire 100 percent of the stock in the Palmerton Bank. [N.T. 10]. Sometime in the late 1970's or early 1980's Mr. Checho made an offer to purchase the bank stock of Palmerton Bank in his personal capacity. [N.T. 13–14]. He made a tender offer by mail. [N.T. 14]. As a result of the tender offer, a number of shareholders sold their shares to him. [N.T. 15].

The Bank reorganization was effected around January of 1990. [N.T. 15]. Prior to the reorganization, the directors of Palmerton Bank consulted with financial consultants, Sheshunoff, located in Texas. [N.T. 16]. Regular Board of Directors meetings

---

3. Count III of plaintiffs' complaint which is a derivative claim on behalf of First National Bank of Palmerton is also based on a violation of 18 U.S.C. § 1962(c) and § 1964(c).

4. Document 37, Exhibit A.

5. Document 37, Exhibit B.

6. Document 37, Exhibit C.

7. *See* Document 39.

8. *See* Document 40.

were held for all three entities at the main office of the Palmerton Bank and minutes were taken at the meetings. [N.T. 16–18]. A letter dated January 15, 1990 was sent out to all of the shareholders of the Palmerton Bank notifying them of a special shareholders meeting involving the reorganization. [N.T. 18]. An information statement was also sent to all of the shareholders. [N.T. 19]. The shareholders meeting was held on January 30, 1990 and despite some dissenting votes, the reorganization occurred in February of 1990. [N.T. 20–22]. Counsel for Grand Central was at the reorganization meeting and expressed its dissent as to its shares and an additional 290 shares. [N.T. 21–22]. In the information statement sent out on January 15, 1990, there was an indication that the minority shareholders' stock shares would be purchased for $1000.00 per share. [N.T. 27]. This figure was derived at a directors' meeting. [N.T. 28–29].

Mr. Checho stated that consulting fees of $600,000.00 were paid to Palm Bancorp for management and consulting service. [N.T. 32]. The fee was paid on a monthly basis as determined by a tax savings formula. [N.T. 33]. At the time the consulting fees were paid, the directors of Palmerton Bank and Palm Bancorp were the same. [N.T. 33–34]. The consulting fees were paid over a two year period over 1986 and 1987 and were included in the operating expense category on the financial statements. [N.T. 34–35; 47–48].[9]

Mr. Checho further testified that while a cleaning lady who worked for the bank also cleaned his home once a week, he paid her personally for her services. [N.T. 37–38]. The cleaning lady also worked personally for two other directors. [N.T. 39]. He also might have used the same plumbing and heating company as the bank. [N.T. 40]. He testified that he had an expense account for travel and dining on bank business.

[N.T. 42]. Several other bank personnel had access to the credit card. [N.T. 43]. He stated that shareholders were provided with financial statements and that other public records were available for examination by shareholders. [N.T. 44–45].

Mr. Checho was unable to provide the percentage of net earnings that was generated as dividends through 1989. [N.T. 46]. However, he stated that no offers were made in the early mid 1980's by other institutions or corporations seeking to purchase all of the stock of Palmerton Bank. [N.T. 46–47].

Finally, Mr. Checho testified that the consulting fee information would have been included in the annual statements to shareholders who requested them. [N.T. 47–48]. Further, he stated that Palmerton Bank's dividend policy did not change throughout the 1980's, and that the Bank's dividend policy was always minimal dividend payments and capital retention. [N.T. 48].

The deposition of Raymond C. Rinaldi, Esquire [Document 40, Exhibit B], as defendant director and solicitor of Palmerton Bank [N.T. 4–5], deals with correspondence from Mr. Rinaldi's firm pertaining to a transfer of stock which was attempted by plaintiff Grand Central on the books of Palmerton Bank. [N.T. 6–8]. Following the deposition is the correspondence which deals with the registration of the stock.

The plaintiff has attached the Notice of Special Shareholders' Meeting and Information Statement dated January 15, 1990,[10] financial statements and auditor's report of the Palmerton Bank for the years 1985, 1986, 1987, 1988, 1989,[11] financial statements and auditor's report of Palm Bancorp for the years 1985, 1986, 1987, 1988,[12] notices of annual meetings and proxy statements from 1984 to 1989,[13] the tender offer of Salvatore Checho and the Offering Memorandum of

---

**9.** Plaintiffs indicate that Exhibits E through H (Palmerton Bank Financial Statements and Auditors Reports) contain a discrepancy in that no consulting fees were reflected for 1986, but that consulting fees were actually paid by Palmerton Bank to Palm Bancorp for 1986, 1987 and 1988. [Document 40].

**10.** Document 40, Exhibit C.

**11.** Document 40, Exhibits E, F, G, H.

**12.** Document 40, Exhibits I, J, K.

**13.** Document 40, Exhibit L.

Palm Bancorp,[14] minutes of meetings of Palmerton Bank and Palm Bancorp from February 25, 1986,[15] correspondence from the Robert Rossi & Co. to Salvatore Checho,[16] documents relating to the consulting firm, Sheshunoff, regarding organizational documents for the New Palmerton Bank and a consulting agreement,[17] a reorganization and consolidation agreement dated November 14, 1989,[18] and Articles of Association of Palmerton Bank.[19]

Finally, plaintiff includes a "Valuation of Minority Shares of the First National Bank of Palmerton, Palmerton, Pennsylvania as of February 15, 1990."[20] Plaintiffs retained Austin Associates, Inc. to determine the fair value of the minority shares of Palmerton Bank stock as of February 15, 1990. After analyzing the available information, Austin Associates determined the fair value of a minority share of Palmerton Bank stock to be $2,068 per share as of February 15, 1990.

We must agree with defendants that the plaintiffs have failed to establish the existence of an essential element of their case, and on which they will bear the burden of proof at trial, namely, that the defendants engaged in a "pattern of racketeering activity." While the plaintiffs have submitted substantial banking records in support of their claim, we do not believe that these records, which were generated in the normal course of banking business, support plaintiffs' claim of a long-term scheme to defraud the plaintiffs. As the court held in *Kehr Packages, Inc. v. Fidelcor, Inc., supra,* in determining the duration of a scheme involving mail fraud, the relevant criminal conduct is the defendants' deceptive or fraudulent activity, rather than otherwise innocent mailings that may continue for a long period of time. Additionally, the record does not support plaintiffs' allegations that defendants paid excessive salaries to individual defendants and others, that Palmerton Bank paid the individual defendants' personal expenses and allowed its employees to perform personal services, that illegal dividends were paid; and that plaintiffs were not informed of offers by other banks to purchase Palmerton Bank.[21] While plaintiffs do present some evidence regarding the necessity for and timely notice of payments of consulting fees, we do not believe that the record supports the plaintiffs' allegations of mail fraud.

As defendants assert, we believe that the critical acts which form the basis of plaintiffs' action revolve out of the Reorganization Plan. The plan for the Reorganization of Palmerton Bank was disclosed to plaintiffs in the Information Statement of January 15, 1990,[22] notifying the shareholders of a special shareholders meeting to be held on January 30, 1990. The Information Statement also disclosed all material information relative to the Reorganization Plan. Specifically, it described the basis for the reorganization, the dissenters' rights under the National Bank Act,[23] the price that plaintiffs were to receive in the merger, and financial statements showing the book value of the Bank as well as its earnings performance. The shareholders meeting was held on January 30, 1990 and despite some dissenting votes, the reorganization was consummated in February of 1990.[24]

While the plaintiffs' evidence does establish that the $1,000 per share was less than the book value per share and was arbitrarily set by the Board of Directors of Palmerton Bank and that the evaluation by Austin Associates, Inc. does indicate that the fair value of a minority share of Palmerton Bank stock as of February 15, 1990 was $2,068 per

14. Document 40, Exhibits M, N.

15. Document 40, Exhibit O, P.

16. Document 40, Exhibit Q.

17. Document 40, Exhibits R, S.

18. Document 40, Exhibit T.

19. Document 40, Exhibit U.

20. Document 40, Exhibit D.

21. *See* Document 40, Exhibit A, Deposition of Salvatore Checho.

22. Document 40, Exhibit C.

23. 12 U.S.C. § 215.

24. Document 40, Exhibit A, N.T. 20–22.

share,[25] we do not believe that this action indicates a pattern of racketeering activity on the part of defendants.[26] As the court held in *Hughes v. Consol–Pennsylvania Coal Company*, 945 F.2d 594 (3d Cir.1991), continuity is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. A review of the evidence presented by plaintiffs, as outlined above, does not indicate that the defendants used fraud as a regular way of doing business or formed an on-going criminal association. Nor do we believe that the evidence supports plaintiffs' allegations that from 1982 to the present, the defendants devised and participated in schemes to defraud the plaintiffs.

■ While the plaintiffs may be correct in their assertions that the defendants intended to terminate the minority shareholders' interest in Palmerton Bank, we do not believe that the plaintiffs' evidence which culminates in the reorganization in February of 1990 reflects long term fraudulent activity or activities which are likely to continue. *Kehr Packages, Inc., supra; See also, Ferdinand Drexel Investment Co., Inc. v. Alibert*, 723 F.Supp. 313 (E.D.Pa.1989) *aff'd* 904 F.2d 694 (3d Cir.1990), *cert. denied*, 498 U.S. 856, 111 S.Ct. 154, 112 L.Ed.2d 120 (1990). Accordingly, we do not believe that plaintiffs have established a pattern of racketeering activity as to Counts I, III, and V of the complaint sufficient to place it in the ambit of the RICO statute.

■ Counts II, IV and VI of plaintiffs' complaint allege a violation of 18 U.S.C. § 1962(d), RICO conspiracy. In order to adequately plead conspiracy, the plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose. Additionally, the elements must include agreement to commit predicate acts and knowledge that the acts were part of a

pattern of racketeering activity. *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162 (3d Cir.1989).

Based on our review of the evidence presented as reflected above, we cannot find that plaintiffs can establish the essential elements for a claim under 18 U.S.C. § 1962(d). Accordingly, we will grant the defendants' motion for summary judgment. An appropriate Order will be entered.

### ORDER

NOW, THEREFORE, this 16th day of March, 1992, IT IS HEREBY ORDERED THAT:

[1] the defendants' motion for summary judgment [Document 35] is granted;

[2] the plaintiffs' cross motion for summary judgment [Document 44] is denied;

[3] the plaintiffs' motion to deny and dismiss defendants' motion for summary judgment [Document 42] is denied;

[4] judgment is hereby entered in favor of the defendants and against the plaintiffs; and

[5] the Clerk of Court is directed to close this case.

---

25. Document 40, Exhibit D.

26. We note that defendants indicate that plaintiffs are entitled to an appraisal of their shares under the National Bank Act and that plaintiffs have taken steps to perfect their rights to an appraisal by the Office of Comptroller of the Currency.