945 F.2d 594
 RICO Bus.Disp.Guide 7843, RICO Bus.Disp.Guide 7886
 James E. HUGHES and Linda L. Hughes, Appellant,
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, William Reese, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Co., Consol-Land Development Co., Maria
Theresia Bergbaugesellschaft MBH & Rheinische Braunkohlenwerke.
Dorothy LOUGHMAN, Appellant,
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT, and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke.
Paul H. KENT and Mabel Kent, Appellants,
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Maria Theresia Bergbaugesellschaft, MBH & Rheinische
Braunkohlenwerke.
James C. McINTYRE and Glenna McIntyre, Appellants,
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, Mike Wilson, an individual, James Leach, an
individual, David Boggs, an individual, Ewing Pollock, an
individual, and the law firm of Pollock, Pollock and Thomas,
The Upshur Agency, Inc., Consolidated Coal Company,
Consol-Land Development Company, Rheinbraun
Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke.
Larry LEVINE, Dan Levine, Morris Levine, Edward Levine,
individuals, and Morris Levine Enterprises, Inc.,
a corporation, and Levine Iron and
Metal, Inc., a corporation, Appellants,
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke.
Dorothy LOUGHMAN
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Consol-Pennsylvania Coal Company, Consolidated Coal Co.,
Consol-Land Development Company, and The
Monongahela Railway Company, Appellants.
Dorothy LOUGHMAN
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Rhein Braun U.S., a corporation, Maria Theresia
Bergbaugesellschaft MBH, and Rheinische
Braunkohlenwerke, Appellants.
Dorothy LOUGHMAN
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, William Reese, an individual, Mike Wilson, an
individual, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
David Boggs, an individual, The Upshur Agency, Inc., William
Reese, an individual, Mike Wilson, an individual,
Appellants.
John W. YESENOSKY, Jr. and Linda M. Yesenosky
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, William Reese, an individual, James Leach, an
individual, David Boggs, an individual, Ewing Pollock, an
individual, and the law firm of Pollock, Pollock and Thomas,
The Upshur Agency, Inc., Consolidated Coal Company,
Consol-Land Development Company, Rheinbraun
Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Consol-Pennsylvania Coal Company, Consolidated Coal Company,
Consol-Land Development Company, and the
Monongahela Railway Company, Appellants.
John W. YESENOSKY, Jr. and Linda M. Yesenosky
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, William Reese, an individual, James Leach, an
individual, David Boggs, an individual, Ewing Pollock, an
individual, and the law firm of Pollock, Pollock and Thomas,
The Upshur Agency, Inc., Consolidated Coal Company,
Consol-Land Development Company, Rheinbraun
Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Rhein Braun U.S., a corporation, Maria Theresia
Bergbaugesellschaft, MBH, and Rheinische
Braunkohlenwerke, Appellants.
Paul H. KENT and Mabel Kent
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Maria Theresia Bergbaugesellschaft, MBH & Rheinische Braunkohlenwerke
Consol-Pennsylvania Coal Company, a corporation, Monongahela
Railway Company, a corporation, Consolidated Coal
Company, Consol-Land Development
Company, Appellants.
Paul H. KENT and Mabel Kent
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Maria Theresia Bergbaugesellschaft, MBH & Rheinische Braunkohlenwerke
Rhein Braun U.S., a corporation, Maria Theresia
Bergbaugesellschaft MBH, Rheinische
Braunkohlenwerke, Appellants.
James C. McINTYRE and Glenna McIntyre
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, Mike Wilson, an individual, James Leach, an
individual, David Boggs, an individual, Ewing Pollock, an
individual, and the law firm of Pollock, Pollock and Thomas,
The Upshur Agency, Inc., Consolidated Coal Company,
Consol-Land Development Company, Rheinbraun
Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Consol-Pennsylvania Coal Company, a corporation, Monongahela
Railway Company, a corporation, Consolidated Coal
Company, Consol-Land Development
Company, Appellants.
James C. McINTYRE and Glenna McIntyre
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, Mike Wilson, an individual, James Leach, an
individual, David Boggs, an individual, Ewing Pollock, an
individual, and the law firm of Pollock, Pollock and Thomas,
The Upshur Agency, Inc., Consolidated Coal Company,
Consol-Land Development Company, Rheinbraun
Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Rhein Braun U.S., a corporation, Maria Theresia
Bergbaugesellschaft MBH, Rheinische
Braunkohlenwerke, Appellants.
Larry LEVINE, Dan Levine, Morris Levine, Edward Levine,
Morris Levine Enterprises, Levine Iron & Metal
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Consol-Pennsylvania Coal Company, a corporation, Monongahela
Railway Company, Consolidated Coal Company,
Consol-Land Development Company, Appellants.
Larry LEVINE, Dan Levine, Morris Levine, Edward Levine,
Morris Levine Enterprises, Levine Iron & Metal
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Maria Theresia Bergbaugesellschaft, MBH & Rheinische Braunkohlenwerke
Rhein Braun U.S., a corporation, Maria Theresia
Bergbaugesellschaft MBH, Rheinische
Braunkohlenwerke, Appellants.
James HUGHES and Linda Hughes
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, William Reese, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Maria Theresia Bergbaugesellschaft, MBH & Rheinische Braunkohlenwerke
Consol-Pennsylvania Coal Company, a corporation, Monongahela
Railway Company, Consolidated Coal Company,
Consol-Land Development Company, Appellants.
James HUGHES and Linda Hughes
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, William Reese, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Maria Theresia Bergbaugesellschaft, MBH & Rheinische Braunkohlenwerke
Rhein Braun U.S., a corporation, Maria Theresia
Bergbaugesellschaft MBH, Rheinische
Braunkohlenwerke, Appellants.
Thomas J. ALLEN
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Consol-Pennsylvania Coal Company, a corporation, Monongahela
Railway Company, Consolidated Coal Company,
Consol-Land Development Company,
Consol-Land Development
Company, Appellants.
Thomas J. ALLEN
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Rhein Braun U.S., a corporation, Maria Theresia
Bergbaugesellschaft MBH, Rheinische
Braunkohlenwerke, Appellants.
Dorothy LOUGHMAN
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, David Boggs, an individual, Ewing Pollock, an
individual, and the law firm of Pollock, Pollock and Thomas,
The Upshur Agency, Inc., Consolidated Coal Company,
Consol-Land Development Company, Rheinbraun
Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Ewing Pollock, and Pollock, Pollock and Thomas, Appellants.
John W. YESENOSKY, Jr. and Linda M. Yesenosky, Appellants,
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, William Reese, an individual, James Leach, an
individual, David Boggs, an individual, Ewing Pollock, an
individual, and the law firm of Pollock, Pollock and Thomas,
The Upshur Agency, Inc., Consolidated Coal Company,
Consol-Land Development Company, Rheinbraun
Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke.
John W. YESENOSKY, Jr. and Linda M. Yesenosky
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, William Reese, an individual, James Leach, an
individual, David Boggs, an individual, Ewing Pollock, an
individual, and the law firm of Pollock, Pollock and Thomas,
The Upshur Agency, Inc., Consolidated Coal Company,
Consol-Land Development Company, Rheinbraun
Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Ewing Pollock, and Pollock, Pollock and Thomas, Appellants.
John W. YESENOSKY, Jr. and Linda M. Yesenosky
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, Mike Wilson, an individual, William Reese, an
individual, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Mike Wilson, William Reese, David Boggs, The Upshur Agency,
Inc., Appellants.
Paul H. KENT and Mabel Kent
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Maria Theresia Bergbaugesellschaft, MBH & Rheinische Braunkohlenwerke
Ewing Pollock, and Pollock, Pollock and Thomas, Appellants.
Paul H. KENT and Mabel Kent
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, Mike Wilson, an individual, William Reese, an
individual, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Maria Theresia Bergbaugesellschaft, MBH & Rheinische Braunkohlenwerke
Mike Wilson, William Reese, David Boggs, The Upshur Agency,
Inc., Appellants.
James C. McINTYRE and Glenna McIntyre v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, Mike Wilson, an individual, James Leach, an
individual, David Boggs, an individual, Ewing Pollock, an
individual, and the law firm of Pollock, Pollock and Thomas,
The Upshur Agency, Inc., Consolidated Coal Company,
Consol-Land Development Company, Rheinbraun
Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Ewing Pollock and Pollock, Pollock and Thomas, Appellants.
James C. McINTYRE and Glenna McIntyre
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, Mike Wilson, an individual, William Reese, an
individual, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Mike Wilson, William Reese, David Boggs, The Upshur Agency,
Inc., Appellants.
Larry LEVINE, Dan Levine, Morris Levine, Edward Levine,
Morris Levine Enterprises, Levine Iron & Metal
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Ewing Pollock, and Pollock, Pollock and Thomas, Appellants.
Larry LEVINE, Dan Levine, Morris Levine, Edward Levine,
Morris Levine Enterprises, Levine Iron & Metal
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, Mike Wilson, an individual, William Reese, an
individual, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Mike Wilson, William Reese, David Boggs, The Upshur Agency,
Inc., Appellants.
James HUGHES and Linda Hughes
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, William Reese, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Maria Theresia Bergbaugesellschaft, MBH & Rheinische Braunkohlenwerke
Ewing Pollock and Pollock, Pollock and Thomas, Appellants.
James HUGHES and Linda Hughes
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, Mike Wilson, an individual, William Reese, an
individual, David Boggs, an individual, Ewing Pollock, an
individual, and the law firm of Pollock, Pollock and Thomas,
The Upshur Agency, Inc., Consolidated Coal Company,
Consol-Land Development Company, Maria Theresia
Bergbaugesellschaft, MBH & Rheinische Braunkohlenwerke
Mike Wilson, William Reese, David Boggs, The Upshur Agency,
Inc., Appellants.
Mark E. HEADLEE and Charlotte B. Headlee, Appellants,
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke.
Mark E. HEADLEE and Charlotte B. Headlee
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Consol-Pennsylvania Coal Company, a corporation, Monongahela
Railway Company, Consolidated Coal Company,
Consol-Land Development Company, Appellants.
Mark E. HEADLEE and Charlotte B. Headlee
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Rhein Braun U.S., a corporation, Maria Theresia
Bergbaugesellschaft MBH, Rheinische
Braunkohlenwerke, Appellants.
Mark E. HEADLEE and Charlotte B. Headlee
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Ewing Pollock, and Pollock, Pollock and Thomas, Appellants.
Mark E. HEADLEE and Charlotte B. Headlee
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, Mike Wilson, an individual, William Reese, an
individual, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Mike Wilson, William Reese, David Boggs, The Upshur Agency,
Inc., Appellants.
Thomas J. ALLEN, Esquire, Personal Representative of the
Estate of John T. Throckmorton, Appellants,
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke.
Thomas J. ALLEN, Esquire, Personal Representative of the
Estate of John T. Throckmorton
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Ewing Pollock, and Pollock, Pollock and Thomas, Appellants.
Thomas J. ALLEN, Esquire, Personal Representative of the
Estate of John T. Throckmorton
v.
CONSOL-PENNSYLVANIA COAL COMPANY, a corporation, Rhein Braun
U.S., a corporation, Monongahela Railway Company, a
corporation, Mike Wilson, an individual, William Reese, an
individual, James Leach, an individual, David Boggs, an
individual, Ewing Pollock, an individual, and the law firm
of Pollock, Pollock and Thomas, The Upshur Agency, Inc.,
Consolidated Coal Company, Consol-Land Development Company,
Rheinbraun Verkaufsgesellschaft, MBLT and Maria Therese
Verkaufsgesellschaft, Maria Theresia Bergbaugesellschaft,
MBH & Rheinische Braunkohlenwerke
Mike Wilson, William Reese, David Boggs, The Upshur Agency,
Inc., Appellants.
 Nos. 90-3466 to 90-3485, 90-3494 to 90-3513.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 28, 1991.
Decided Sept. 20, 1991.
As Amended on Denial of Rehearing
Dec. 20, 1991.
 
 Louis M. Tarasi, Jr. (argued), Joseph J. Hinchliffe (argued), Tarasi & Johnson, Pittsburgh, Pa., David C. Hook, Hook & Hook, Waynesburg, Pa., for appellants in Nos. 90-3466, 90-3467, 90-3468, 90-3469, 90-3470, 90-3495, 90-3506, 90-3511.
 Joseph A. Katarincic (argued), Katarincic & Salmon, Pittsburgh, Pa., for appellants in Nos. 90-3471, 90-3474, 90-3476, 90-3478, 90-3480, 90-3482, 90-3484, 90-3507.
 Joseph D. Becker (argued), Becker, Glynn & Melamed, New York City, for appellants in Nos. 90-3472, 90-3475, 90-3477, 90-3479, 90-3481, 90-3483, 90-3485, 90-3508.
 James F. Manley (argued), Burns, Manley & Little, Pittsburgh, Pa., for appellants in Nos. 90-3473, 90-3497, 90-3499, 90-3501, 90-3503, 90-3505, 90-3510, 90-3513.
 Kathryn L. Simpson, Vincent J. Grogan, Grogan, Graffam, McGinley & Lucchino, Pittsburgh, Pa., for appellants in Nos. 903494, 90-3496, 90-3498, 90-3500, 90-3502, 90-3504, 90-3509, 90-3512.
 Before SLOVITER, Chief Judge, NYGAARD, Circuit Judge and KATZ, District Judge*.
 OPINION OF THE COURT
 NYGAARD, Circuit Judge.
 
 
 1
 These consolidated appeals arise from a series of complaints filed by plaintiffs after Monongahela Railway Company acquired their properties and rights-of-way in trust for Consolidated Coal Company, for it to construct and operate a 14.5 mile track from a coal mine to Monongahela's main line. Plaintiffs allege that defendants, Monongahela and Consolidated Coal, among others, fraudulently misrepresented facts to obtain favorable prices. They sought lost profits on theories of civil conspiracy, common law fraud, and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.
 
 I. FACTS AND PROCEDURE
 
 2
 Consolidated Coal Company (Consol) acquired the Nineveh and Manor coal reserves located in Greene County, Pennsylvania. To exploit these reserves, it needed railroad rights-of-way. In December 1980, Consol signed a letter of intent with Rheinische Braunkohlenwerke A.G. (RBW) to form a joint venture to develop these mining reserves. On June 30, 1981, their affiliates, Consol-Pennsylvania Coal Company (Consol-PA) and Rheinbraun U.S. Corporation, signed an "Operating Joint Venture Agreement". On October 29, 1981, Consol and Maria Theresia Bergbaugesellshaft (MTB), a RBW subsidiary, formed Conrhein Coal Company, a partnership. Conrhein subleased the reserves to the joint venture of Consol-PA and Rheinbraun U.S. These affiliates held the reserves as tenants in common.
 
 
 3
 The coal reserves are located about 14.5 miles from Monongahela Railroad Company's (Monongahela) main line. Consol needed a spur railroad to transport coal from the reserves. On September 30, 1981, Consol and Monongahela signed a "Property Acquisition Agreement". They agreed that Monongahela would use the railroad's eminent domain power to acquire more than fifty parcels of land owned by plaintiffs and other landowners in the "Areas of Interest". Monongahela would hold any land it acquired in trust for Consol. In the same agreement, Monongahela and Consol contracted with Upshur Agency, a real estate broker. Upshur agreed to negotiate with plaintiffs for the needed rights-of-way.
 
 
 4
 The Rheinbraun corporations were concerned that Consol would be unable to purchase the needed rights-of-way to transport the coal to the various markets. Consequently, addenda were added to their agreements. They provide that Rheinbraun could withhold $12.5 million of its $75 million total investment in the venture for each year that passed before Consol obtained the rights-of-way. If the rights-of-way were not purchased after five years, Rheinbraun could withdraw entirely from the venture.
 
 
 5
 Time was crucial. The scheme to defraud plaintiffs unfolded as follows. Upshur agents acquired the properties from plaintiffs "in the name of 'Monongahela Railroad Corporation,' " concealing the identity of the true acquirer Consol (which lacked condemnation power). App. at 1160A. Upshur told plaintiffs that if they refused to sell Monongahela would exercise its power of eminent domain and give a fixed price per acre upon condemnation.
 
 
 6
 Following this scheme, Upshur agents approached plaintiffs and negotiated for the needed rights-of-way. Plaintiffs sold parcels to Monongahela. When some plaintiffs initially refused or hesitated, Upshur agents made thinly-veiled threats to induce them to sell. For example, an Upshur agent threatened to bring condemnation proceedings against James and Linda Hughes. The Hughes sold their 1.5 acre land for $90,000. An Upshur agent threatened to condemn Mark and Charlotte Headlee's property for $700 per acre. The Headlees sold their 26 acre land for $168,000. An Upshur agent threatened John and Linda Yesenosky, whose son was afflicted with acute asthma, that trains could be parked across their driveway. The Yesenoskys sold their 3.6 acre land for $67,000. In some of these instances, either Upshur agents or defendant attorneys told plaintiffs that part of the purchase price would be tax free.
 
 
 7
 Among the landowners, five--Grover and Imogene Phillippi, John and Sharon Culp, and Sarah Closser--either discovered Consol's undisclosed role or were land speculators. Upon the advice of their attorneys, they refused to accept Upshur's original purchase offers. Because these landowners were fully informed and on equal footing with the defendants, Upshur agents were forced to pay substantially higher prices. Specifically, the Phillippis sold 5.2 acres for $600,000 plus the installation of railroad siding. The Culps sold 13.3 acres for $1 million. And Closser sold 1.9 acres for $445,000.
 
 
 8
 On April 19, 1983, nine plaintiffs filed eight complaints against Consol, Consol-PA, Consol Land Development Company, Monongahela, RBW, MTB, Ewing Pollock, Esq., his law firm, Upshur, and Upshur agents David Boggs, William Reese and Mike Wilson. Plaintiffs alleged violations of RICO, civil conspiracy, and common law fraud. One plaintiff, Dorothy Loughman, also alleged attorney malpractice against Pollock. All eight complaints were consolidated for trial purposes.
 
 
 9
 Defendants moved for partial summary judgment on plaintiffs' claim that Upshur agents misrepresented Monongahela's power of eminent domain. They contended Monongahela had the power to condemn plaintiffs' properties. On August 6, 1986, the district court granted defendants' motion, but sent the remaining claims of fraudulent misrepresentation, RICO violations, and civil conspiracy to the jury. Finding most of the defendants liable, the jury awarded $5,360,500 in compensatory damages, trebled under RICO. See 18 U.S.C. § 1964(c). It also awarded $5,500,000 in punitive damage because it found defendants acted outrageously.
 
 
 10
 The district court believed the jury based its compensatory award on the testimony of plaintiffs' land valuation expert, Mr. Gary Bodnar. Bodnar opined that the highest and best use as railroad rights-of-way determines market value of the properties. Because a railroad right-of-way is commercial or industrial property, Bodnar calculated the market value by comparing the properties with purchase prices of other commercial and industrial properties as well as prices eventually obtained by Closser, the Phillippis, and the Culps.
 
 
 11
 Defendants moved for judgment n.o.v. on all claims. On October 22, 1987, the district court granted defendants' motion for the RICO claims for it concluded plaintiffs failed to satisfy RICO's "continuity" requirement. Supp.App. at 127-28. It also set aside the compensatory damage award because the award was "obscenely excessive." Id. at 123. The court suggested remittitur, but when the parties disagreed on the amount of damages to remit it ordered a new damages trial. Plaintiffs moved for reconsideration of the district court's orders. On May 17, 1988, the court reinstated the RICO verdicts, vacating in part its October 22, 1987 grant of judgment n.o.v. On June 9, 1988, it decided not to submit the issue of punitive damages to a second jury.
 
 
 12
 On November 20, 1989, before the start of the second trial, defendants moved to vacate the May 17, 1988 order that vacated the judgment n.o.v. of October 22, 1987 and reinstated the RICO claim. On March 1, 1990, the court granted defendants' motion to vacate the May 17, 1988 order, reinstated the October 22, 1987 grant of judgment n.o.v. on the RICO claim, and ordered retrial of the punitive damages issue.
 
 
 13
 In the second trial on damages, the jury award plaintiffs $4,262,677 in compensatory damages and $674,000 in punitive damages. The defendants moved for judgment n.o.v., new trial, and reargument. The district court denied these motions. Plaintiffs and defendants filed timely appeals, alleging errors at both trial.
 
 
 14
 We address these issues raised by plaintiffs: (1) whether plaintiffs satisfied the continuity requirement under RICO; (2) whether Upshur agents misrepresented Monongahela's condemnation power; (3) whether the district court abused its discretion by setting aside the first damage award; (4) whether plaintiffs should be entitled to prejudgment interest and delay damages; and (5) whether the district court erred by granting judgment n.o.v. on plaintiff Dorothy Loughman's legal malpractice claim.
 
 
 15
 We address these issues raised by defendants: (1) whether sufficient evidence existed to support the first jury award of punitive damages; (2) whether the district court erred by instructing the jury that a misrepresentation is actionable regardless of materiality if the misrepresentation was made knowingly; (3) whether plaintiffs justifiably relied on the Upshur agents' statements concerning the tax free nature of the property transactions; and (4) whether certain comments made by the judge in the first trial deprived defendants of a fair trial.
 
 II. RICO CLAIM
 
 16
 The district court granted defendants' motion for judgment n.o.v. on the federal RICO claims because plaintiffs failed to prove the continuity prong of RICO's "pattern of racketeering activity" requirement. Memorandum Opinion of March 1, 1990 at 15 (Smith, J.). See 18 U.S.C. § 1962(c). We will affirm.
 
 
 17
 When reviewing a judgment n.o.v. we must construe the evidence in a light most favorable to the non-movant and search the record for the minimum quantum of evidence to support the jury verdict. Burke v. Maassen, 904 F.2d 178, 181 (3d Cir.1990). Here we cannot find the minimum quantum of evidence to support continuity.
 
 
 18
 We begin our analysis with the statute. RICO, the Racketeer Influenced Corrupt Organization Act, 18 U.S.C. §§ 1961-68 (1984 & Supp.1990), authorizes civil suits by "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." Id. § 1964(c). To prove that defendants violated section 1962, one must show "a pattern of racketeering activity." This requires commission of "at least two acts of racketeering activity." Id. § 1961(5). These predicate acts include violating federal mail and wire fraud statutes. 18 U.S.C. §§ 1341, 1343. Section 1961's two act requirement does not define a pattern of racketeering activity so much as it sets a minimum condition for such patterns to exist. H.J. Inc. v. Northwestern Tel. Co., 492 U.S. 229, 237, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989). The statute does not define such a pattern.
 
 
 19
 In H.J. Inc., the Supreme Court held that a pattern of racketeering activity requires the predicate acts be "related, and that they pose a threat of continued criminal activity." 492 U.S. at 239, 109 S.Ct. at 2899 (emphasis in original). Predicate acts are related when they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id., 492 U.S. at 240, 109 S.Ct. at 2901. Because the district court granted judgment n.o.v. on continuity grounds we will assume relatedness and analyze continuity only. The H.J. Inc. Court described continuity but fell short of defining it. Continuity is a temporal concept. It is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id., 492 U.S. at 241, 109 S.Ct. at 2901. If a plaintiff alleges a RICO violation over a closed period ("closed-ended" scheme), she must prove a series of related predicates lasting a "substantial period of time." Id. at 242, 109 S.Ct. at 2902. If, however, she alleges a RICO violation before continuity is established ("open-ended" scheme), she must prove a "threat of continuity." Id. A threat of continuity exists when the predicate acts are a part of defendant's "regular way of doing business." Id. That is, defendant operates a "long-term association that exists for criminal purposes." Id.
 
 
 20
 Though the Court provides the basic structure to analyze continuity, continuity depends ultimately on the "specific facts of each case." Id. The Court openly invites lower courts to define it. Id. at 243, 109 S.Ct. at 2902 ("development of these concepts must await future cases").
 
 
 21
 In Marshall-Silver Constr. Co. v. Mendel, plaintiff alleged acts of mail fraud and extortion lasting seven months related to a scheme to force a single business entity bankrupt. 894 F.2d 593 (3d Cir.1990). We held that the span of seven months showed "neither 'long-term' criminal conduct nor the threat thereof." Id. at 598.
 
 
 22
 In Banks v. Wolk, plaintiff alleged that two of the defendants, Wolk and Weiner, misrepresented facts to defraud him of his interest in a single piece of real estate. 918 F.2d 418 (3d Cir.1990). The injury occurred within an eight month period and there was no threat of "future misconduct by Wolk or Weiner." Id. at 423. As to this closed-ended scheme, we held eight months was insufficient to show continuity. See Kehr Packages, Inc. v. Fidelcor, 926 F.2d 1406, 1418 (3d Cir.1991) ("eight-month period of fraudulent activity directed at a single entity does not constitute a pattern, absent a threat of future criminal acts"); Hindes v. Castle, 937 F.2d 868, 875 (3d Cir.1991) (eight month period failed to satisfy continuity).
 
 
 23
 Contrasting Marshall-Silver, Banks, Kehr, and Hindes, we note that in H.J. Inc. the Court found that violations lasting six years were sufficient to show "substantial period of time" in a closed-ended scheme or, alternatively, to show regular way of doing business in an open-ended one. 492 U.S. at 250, 109 S.Ct. at 2906. In other circuits, only a period of years appears substantial. See Fleet Credit Corp. v. Sion, 893 F.2d 441, 447 (1st Cir.1990) (over four years); Walk v. Baltimore & Ohio R.R., 890 F.2d 688, 690 (4th Cir.1989) (ten years); Jacobson v. Cooper, 882 F.2d 717, 720 (2d Cir.1989) (unspecified "matter of years"); Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio, 900 F.2d 882, 887 (6th Cir.1990) (seventeen years).
 
 
 24
 After H.J. Inc., we found continuity in two cases. Both were of the open-ended kind. That is, they involved a future threat of RICO violations. In Swistock v. Jones, we held that because plaintiffs alleged future violations as to "other potential transactions" plaintiff sufficiently raised the issue of whether fraud was the defendant's regular way of doing business (though the predicate acts lasted only fourteen months). 884 F.2d 755 (3d Cir.1989). And in Banks, we found that some of the defendants, the Cohen brothers, used fraud as a regular way of doing business. 918 F.2d at 424. Thus as to the Cohen brothers, but not Wolk or Weiner, we found continuity.
 
 
 25
 Plaintiffs identified the RICO violation as "fraudulent misrepresentations, threats and omissions ... [that resulted in plaintiffs selling] their property well below its true value." App. at 59 (Kent's Amended Complaint, p 45.) They alleged violations of federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, as the predicate acts underlying RICO violations. See 18 U.S.C. § 1961(1). We will examine the evidence with respect to both open- and closed-ended schemes.
 
 
 26
 As to open-ended scheme, we find no evidence that defendants used fraud as a regular way of doing business or formed an on-going criminal association. Upshur threatened plaintiffs to obtain specific parcels of property. Plaintiffs each had but one property to sell; defendants had but one area to acquire. There were no "potential" areas of interest. Once defendants obtained the property, they posed no future threat to plaintiffs or society. The defendants' fraud was not akin to the type where hoodlums sell "insurance" to storekeepers to cover them against breakage of their windows, telling their victims they would return each month to collect their "premiums". H.J. Inc., 492 U.S. at 242, 109 S.Ct. at 2902. Theirs was akin to a one time racket to obtain a specific bounty. We find no continuity under an open-ended scheme.
 
 
 27
 As to closed-ended scheme, we find no evidence of a substantial period of time. In the first trial, Judge Teitelbaum first found no continuity and then reversed himself. In the second trial, on March 1, 1990, Judge Smith held that there was no continuity. We agree that there was no continuity.
 
 
 28
 Reviewing the record, Judge Teitelbaum made the correct factual finding: Defendants' scheme "lasted from July 1981 until sometime in early-1982." Memorandum Opinion of May 17, 1988 at 7 (Teitelbaum, J.). More precisely, Judge Smith found the scheme lasted from June 1981 to June 1982. Memorandum Opinion of March 1, 1990 at 13 (Smith, J.). In fact plaintiffs testified that contacts with Upshur agents--the source of these actions--started about September 1981 and ended in June 1982, a ten month period. Loughman v. Consol-Pennsylvania Coal Co., 740 F.Supp. 1114, 1120 (W.D.Pa.1990).
 
 
 29
 All the evidence points to a short term operation. The Property Acquisition Agreement between Consol and Monongahela shows they anticipated needing Upshur for only 120 days. When all the property in the "Areas of Interest" were acquired, Upshur was to be discharged. The agreement shows no intent to acquire more land than originally contemplated. It specifically links the existing spur to all mines in the area and does not mention the need for more construction of spurs or taking of private property. When the defendants acquired all the property in the areas of interest, the fraud was complete. In short, defendants worked a single-scheme, single-victim (albeit a class of victims) operation that lasted one year at most.
 
 
 30
 Because "duration is the sine qua non of continuity" in a closed-ended scheme, the issue then is whether twelve months is a substantial period of time. Hindes, 937 F.2d at 873. In Hindes we hinted that one year is not a substantial period of time. Id. at 875 ("we will not hold that although eight months is not enough [to be a substantial period of time], a year is"). We hold that twelve months is not a substantial period of time.
 
 
 31
 We note that cases finding substantial period, including H.J. Inc., dealt with fraudulent conduct lasting years, sometimes over a decade. Such findings of substantial time periods are consistent with Congress' intent to combat "long-term criminal conduct." H.J. Inc., 492 U.S. at 242, 109 S.Ct. at 2902. Recently, we noted that "[a]lthough RICO has not been limited to organized crime activity, we must not overlook that it was occasioned by Congress' perception of the danger posed by organized crime-type offenses, which are almost by definition continuing." Hindes, 937 F.2d at 874.
 
 
 32
 The time period of this case belongs with those of Marshall-Silver (seven months), Banks (eight months), Kehr (eight months), and Hindes (eight months). We therefore find no continuity under a closed-ended scheme. In Hindes we declined to set forth a "litmus test" to measure duration. Id. at 875. We still decline. We conclude only that there is no qualitative difference between eight and twelve months for the purposes of RICO continuity.
 
 III. FRAUD UNDER PENNSYLVANIA LAW
 A.
 MONONGAHELA'S CONDEMNATION POWERS
 
 33
 Plaintiffs claimed that when seeking to acquire the railroad rights-of-way defendants fraudulently misrepresented, among other things, that Monongahela had power to condemn private property. The district court found this representation to be true, holding that as a matter of law Monongahela had eminent domain powers. It granted partial summary judgment for defendants as to that representation, but sent other alleged misrepresentations to the jury. Plaintiffs appeal this grant of partial summary judgment. We have plenary review and will affirm.
 
 
 34
 Plaintiffs assert that Monongahela did not have eminent domain power for three reasons: (1) because it lacked the Interstate Commerce Commission's (ICC) approval to construct the new track; (2) because there was no public use to justify condemnation; and (3) because the track was outside Monongahela's chartered area.
 
 
 35
 First, we disagree with plaintiffs as to their first reason. To begin, we note that ICC approval is required when a rail carrier seeks to construct, operate or acquire an additional line or extension. 49 U.S.C. § 10901(a). It, however, is not required when a rail carrier seeks to construct, operate, or acquire an intra-state spur. 49 U.S.C. § 10907(b)(1). Whether a track is a "spur" or "extension" is a mixed question of law and fact. United States v. Idaho, 298 U.S. 105, 109, 56 S.Ct. 690, 692, 80 L.Ed. 1070 (1936).
 
 
 36
 If the proposed track is designed to transport goods between different points of shipment or to invade the territory occupied by another railroad, that track is an extension. See Texas & Pac. Ry. v. Gulf, Colo. & Santa Fe Ry., 270 U.S. 266, 278, 46 S.Ct. 263, 266, 70 L.Ed. 578 (1926); Nicholson v. ICC, 711 F.2d 364, 368 (D.C.Cir.1983), cert. denied, 464 U.S. 1056, 104 S.Ct. 739, 79 L.Ed.2d 197 (1984). If, however, the track is "designed and used for loading, unloading, switching, and other purposes connected with, and incidental to, but not actually and directly used for [transporting goods between two different points of shipment]," that tract is a spur and lies outside ICC jurisdiction. Nicholson, 711 F.2d at 367-368. Among other factors to be considered in determining whether it is a spur are the length of the addition; whether the proposed addition will serve only a single customer; and whether the carrier had been requested by the customer to provide service. See Pennsylvania R.R. Co. v. Reading Co., 132 F.Supp. 616, 621-22 (E.D.Pa.1955).
 
 
 37
 The district court correctly found that the proposed track was a spur. Though a track's designation itself does not determine its character (extension or spur), the track in question is sufficiently local to preclude ICC jurisdiction. Nicholson, 711 F.2d at 368, n. 12. The track runs from the Bailey Mine in Grand Enon, Pennsylvania, to Waynesburg. It runs only 14.5 miles.[1] It is located wholly intra-state. It functions as a route to unload and transfer shipments from the Waynesburg line. It does not invade the territory of another railroad. Only Monongahela uses it. And it serves only Consol. In short, none of its features evokes "national concern." Texas & Pacific, 270 U.S. at 277, 46 S.Ct. at 266. The district court was correct; ICC approval was unnecessary.
 
 
 38
 Second, we disagree with plaintiffs as to the second reason. Plaintiffs contend that Monongahela can only condemn for "public use." See U.S. Const. amends. V; Pa. Const., art. I, § 10; Id., art. X, § 4. The proposed use, they contend, is private.
 
 
 39
 When determining what constitutes "public use," the Supreme Court defers to legislative decisions. Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 241, 104 S.Ct. 2321, 2329, 81 L.Ed.2d 186 (1984) (Court will defer to legislative decision regarding public use unless that decision is unreasonable). That property is taken by eminent domain and is transferred to a private party can still fall within the gambit of public use. This is so even when the motive for taking is to give to a private party. Id., 467 U.S. at 243-44, 104 S.Ct. at 2330-31. Thus, under the United States Constitution "public use" is a broad concept.
 
 
 40
 Pennsylvania law is much the same. A condemning authority may only take for public use. The legislature may not grant the condemnor the right to take private property for private use. See Philadelphia Clay Co. v. York Clay Co., 241 Pa. 305, 309-310, 88 A. 481, 482 (1913); Borough of Big Run v. Shaw, 16 Pa.Commw. 623, 626, 330 A.2d 315, 317 (1975). Notwithstanding, a taking retains its public character even when a portion of it benefits a private party. In re Franklin Town Project-Philadelphia, 19 Pa.Commw. 272, 280-81, 339 A.2d 885, 889, cert. denied, 423 U.S. 992, 96 S.Ct. 409, 46 L.Ed.2d 312 (1975). See Dornan v. Philadelphia Hous. Auth., 331 Pa. 209, 200 A. 834 (1938).
 
 
 41
 In Pioneer Coal Co. v. Cherrytree & Dixonville R.R., the Pennsylvania Supreme Court reasoned that public use should be broadly defined when the use benefits the Commonwealth. 272 Pa. 43, 116 A. 45 (1922). When defendant railroad condemned property to extend its track to reach a coal mine, the Court found public use because "the life, happiness and prosperity of the people of Pennsylvania depend to a very large degree upon getting the coal supply of the state out of the mines, on its way to the consumer." Id., 272 Pa. at 52, 116 A. at 48. See Philadelphia, Wilmington & Baltimore R.R. v. Williams, 54 Pa. 103 (1867) (prosperity of city depended on transporting coal by rail).
 
 
 42
 Here, the district court found public use. We agree. The district court noted: "[Manor Reserve,] once at full production, will produce 3,000,000 tons of coal per year and will employ 350 people. The coal extracted from the mine has an average sulfur content of 1.7%, a low and desirable level that complies with emission standards generally applicable in the United States and Europe." Supp.App. at 115-116. The Manor Reserve mine and the track running to it benefit the Commonwealth's coal mining industry and the public. That the mine serves a private coal company does not diminish the public value. Constructing a spur will tap vital coal resources, provide fuel for the Commonwealth, create jobs, and better the environment.
 
 
 43
 Last, we disagree with plaintiffs as to their third reason. They contend that because the Manor track runs outside Monongahela's charter area Monongahela lacked the power to condemn property outside of its franchise without first obtaining a certificate from the Commonwealth's Public Utility Commission (PUC). See 66 Pa.Cons.Stat.Ann. § 1104.
 
 
 44
 We need not consider this contention in light of what happened at trial. Judge Teitelbaum instructed the jury that "[y]ou will reach the issue of damages only if you find that the plaintiffs have established all of the elements of any of their claims." Supp.App. 218. This instruction reflects the correct assumption that since plaintiffs had but one property each they could have suffered as a result of the misrepresentations only once, regardless of the number of misrepresentations committed. The jury found that fraud was committed and awarded damages to plaintiffs. Thus even if this additional misrepresentation was made, it is irrelevant.
 
 
 45
 In sum, the district court properly granted partial summary judgment on plaintiffs' claim that Upshur agents misrepresented Monongahela's condemnation powers.
 
 B.
 
 46
 JURY INSTRUCTIONS ON FRAUDULENT MISREPRESENTATION
 
 
 47
 The district court instructed the jury, "[i]f it is shown that a misrepresentation was made knowingly, then the misrepresentation need not be material." Supp.App. at 216. Defendants argue that when the district court gave this instruction it erred as a matter of law. We disagree and will affirm. Our review of this legal issue is plenary.
 
 
 48
 Under Pennsylvania law a fraud claim requires plaintiff to prove either a knowing misrepresentation or nonprivileged failure to disclose some existing fact. If, however, "the misrepresentation is innocently made, then it is actionable only if it relates to a matter material to the transaction involved." Smith v. Renault, 387 Pa.Super. 299, 305-06, 564 A.2d 188, 192 (1989) (quoting Shane v. Hoffman, 227 Pa.Super. 176, 181-82, 324 A.2d 532, 536 (1974)), overruled on other grounds, Aiello v. Ed Saxe Real Estate, Inc., 508 Pa. 553, 560-61, 499 A.2d 282, 286 (1985). Thus, materiality becomes important only when the misrepresentation was innocently made or when it involved a privileged failure to disclose. The district court's instructions adequately reflected this distinction.
 
 
 49
 Even if we held all the misrepresentations were innocently made and materiality became a concern, the "error" is harmless. Upshur's misrepresentations were most material. The gross disparity between the prices obtained by the plaintiffs and those who knew of Consol's role (Closser, the Phillippis, and the Culps) bespeaks materiality. Moreover, while defendants correctly point out that Upshur had no duty to disclose Consol's role, they neglect to mention that Upshur agents affirmatively misrepresented that Monongahela was the sole principal. See Chiarella v. United States, 445 U.S. 222, 227-228, 100 S.Ct. 1108, 1114-1115, 63 L.Ed.2d 348 (1980). This representation constituted more than "mere silence"; it constituted active concealment. It amounted to common law fraud. Renault, 387 Pa.Super. at 306, 564 A.2d at 192.
 
 C.
 JUSTIFIABLE RELIANCE ON TAX REPRESENTATIONS
 
 50
 The defendants moved for judgment n.o.v. as to the liability based on the representation of the tax free nature of the transactions. They claim there was insufficient evidence for the jury to conclude that plaintiffs justifiably relied on defendants' representation. Because they are not tax experts, defendants argue, plaintiffs should have independently investigated the tax matter. The district court denied the motion. We will affirm.
 
 
 51
 The same standard of review applies to this denial of a judgment n.o.v. as it did for the denial of the RICO judgment n.o.v., supra. See Kinnel v. Mid-Atlantic Mausoleums, Inc., 850 F.2d 958, 961 (3d Cir.1988).
 
 
 52
 Justifiable reliance on a misrepresentation is an element of common law fraud. Klemow v. Time, Inc., 466 Pa. 189, 197 n. 17, 352 A.2d 12, 16 n. 17, cert. denied, 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976). Moreover, "[w]here the means of obtaining information are not equal the positive representations of the person who is supposed to possess superior means of information may be relied on." Siskin v. Cohen, 363 Pa. 580, 70 A.2d 293 (1950) (quotation omitted).
 
 
 53
 The Upshur agent approached plaintiff landowners, told them that he represented Monongahela, denied involvement of Consol, offered a purchase price, threatened plaintiffs that they would receive a lower fixed condemnation price if they refused to accept the agent's offer, and stated that part of the purchase price paid would be tax free. Upshur agents possessed superior access to information, initiated the sales of property, and presented themselves as land experts. Under these circumstances, the negotiating parties did not stand on equal footing and plaintiffs justifiably relied on the Upshur agent's statements concerning the tax consequences of a sale without making an independent investigation.
 
 
 54
 Justifiable reliance is even more evident in the cases where defendants' attorneys told plaintiffs of the tax free consequences of the sale. A lay person may justifiably rely on a lawyer's statement of fact or opinion of law though he knows the lawyer is representing a client whose interest is adverse to his own. Restatement (Second) of Torts, § 545, comment d.
 
 IV. DAMAGES
 A.
 COMPENSATORY DAMAGE AWARD
 
 55
 Plaintiffs contend that the district court erred by granting a new damages trial. We agree and will reverse. We review for an abuse of discretion. Semper v. Santos, 845 F.2d 1233, 1236 (3d Cir.1988).
 
 
 56
 Under Pennsylvania law, the measure of damages for a fraud claim is the actual loss that the fraud inflicts. Savitz v. Weinstein, 395 Pa. 173, 178 & n. 2, 149 A.2d 110, 113 & n. 2 (1959); Peters v. Stroudsburg Trust Co., 348 Pa. 451, 35 A.2d 341, 343 (1944); Delahanty v. First Pa. Bank, N.A., 318 Pa.Super. 90, 117-18, 464 A.2d 1243, 1257 (1983). Actual loss equals the fair market value of the property when sold minus the fraudulently paid price. Stroudsburg Trust, 348 Pa. at 454, 35 A.2d at 343; Bishoff v. Valley Dairy Co., 302 Pa. 125, 153 A. 133 (1931).[2] The issue is whether the actual loss should be based on the properties' use as agricultural lands or the highest and best use as railroad rights-of-way.
 
 
 57
 At trial, plaintiffs' expert, Bodnar, testified that he valued the properties by assuming the highest and best use parameter: that is, value as a railroad right-of-way. To determine this value, he considered the selling prices of the Closser, Culp, and Phillippi parcels.
 
 
 58
 The district court rejected Bodnar's testimony. Because it believed that the jury relied on Bodnar's testimony to compute the damages, the court rejected the jury award. It characterized Closser, the Culps, and Phillippis as "hold-outs." Since prices paid to hold-outs far exceed true market value, the court reasoned that Bodnar's valuations do not reflect the fair market value.
 
 
 59
 Under Pennsylvania law, a property owner can show her property's special and potential use as a railroad right-of-way when she faces condemnation. See North Shore R.R. v. Pennsylvania Co., 251 Pa. 445, 96 A. 990 (1916); Commonwealth Dep't of General Servs. v. Fake, 45 Pa.Commw. 46, 405 A.2d 971 (1979). To prove highest and best use, a condemnee must show the land is adaptable to such use and a market need existed for such use at the time of the condemnation. Fake, 45 Pa.Commw. at 50-51, 405 A.2d at 974. See United States v. 46,672.96 Acres of Land, 521 F.2d 13, 15 (10th Cir.1975).
 
 
 60
 Contrary to the district court's conclusions, Bodnar properly referred to the prices paid to the "hold-outs." A railroad right-of-way existed across many of the plaintiffs' properties long before Upshur agents approached them. The year before the Upshur agents offered to buy the property, Consol approached some plaintiffs to see if they were interested in selling. Thus plaintiffs' properties were adaptable for use as railroad rights-of-way and Bodnar properly calculated this potential into the value.
 
 
 61
 As to fair market value, the prices paid to the hold-outs reflect the market value. Consol needed each and every piece of property to construct their track. Though the district court correctly characterized Closser, Culp and Phillippi as "hold-outs", it neglected to consider that plaintiffs would have demanded more money had they known what Closser, Culp and Phillippi knew--that Consol was involved and that Monongahela could not have condemned their properties for fixed prices. But for the defendants' scheme misrepresenting the circumstances surrounding Monongahela's property acquisitions, plaintiffs would have commanded higher prices. And these prices more accurately reflect fair market value. The district court abused its discretion by discounting Bodnar's testimony and setting aside the first damage award.
 
 B.
 PUNITIVE DAMAGE AWARD
 
 62
 The defendants contend that there was insuffient evidence to support the jury award of punitive damages against some of the defendants. We disagree and will affirm.
 
 
 63
 "Fraud, alone, is not sufficient" to justify an award of punitive damages. Golomb v. Korus, 261 Pa.Super. 344, 348, 396 A.2d 430, 432 (1978). The conduct must be outrageous for a jury to award punitive damages. Rizzo v. Haines, 520 Pa. 484, 507, 555 A.2d 58, 69 (1989); Pittsburgh Outdoor Adv. Co. v. Virginia Manor Apts., Inc., 436 Pa. 350, 353, 260 A.2d 801, 803 (1970). Where the defendants are agent and principal, the agent's conduct must be "clearly outrageous to justify the vicarious imposition of exemplary damages upon the principal." Delahanty, 318 Pa.Super. at 132, 464 A.2d at 1264 (quoting Skeels v. Universal C.I.T. Credit Corp., 335 F.2d 846, 851-52 (3d Cir.1964)). Plaintiffs must show outrageous conduct by a preponderance of the evidence. See Martin v. Johns-Manville Corp., 508 Pa. 154, 494 A.2d 1088, 1098 (1985).
 
 
 64
 Plaintiffs clearly showed outrageous conduct. Upshur agent Boggs told the Hughes that they would have to be out of their house within two months though they had no interest in selling their property. He told the Headlees: "[Y]ou forget Consol. You are dealing with Mon railway system now." App. at 116A. When the Headlees expressed concern about the proximity of the track to their house and children, Boggs stated that if the right-of-way were condemned, the railroad could place the tracks within 10 feet of their home and is under no duty to fence the track or to otherwise provide for the safety of the Headlees' children. We hold that the jury could reasonably conclude that defendants acted outrageously when they obtained property by fraud, economic coercion, and thinly-veiled personal threats.
 
 C.
 DELAY DAMAGES AND PREJUDGMENT INTEREST
 
 65
 The district court awarded delay damages under Pa.R.Civ.P. 238. We have plenary review and will reverse. Rule 238 allows for interest on compensation awards arising from "bodily injury, death or property damage." Because this case involves lost profits the district court erred by allowing them.
 
 
 66
 As for prejudgment interest, the district court refused to award it. We agree and will affirm. When deciding whether to award prejudgment interest to a party, a court must consider "whether countervailing equitable considerations militate against such a surcharge." See American Mut. Liab. Ins. Co. v. Kosan, 635 F.Supp. 341, 346 (W.D.Pa.1986), aff'd, 817 F.2d 751 (3d Cir.1987).
 
 
 67
 In Arkla Exploration Co. v. Boren, the court of appeals refused to award prejudgment interest where the plaintiff did not preserve the issue under Fed.R.Civ.P. 51 at the time the district court instructed the jury on the amount of damages to be entered should they choose to return a liability verdict. 411 F.2d 879, 883-884 (8th Cir.1969).
 
 
 68
 Likewise plaintiffs failed to preserve the issue here. Plaintiffs first moved for prejudgment interest in June 1990, seven years after filing this action in federal court. This was too late. Plaintiffs explain this delay by noting that the district court awarded them delay damages under Pa.R.Civ.P. 238. Since American Enka Co. v. Wicaco Mach. Corp. prevents a party from obtaining both delay damages and prejudgment interest, plaintiffs argue that they were forced to rely on the court's award of delay damages and could not request prejudgment interest. 686 F.2d 1050, 1057 (3d Cir.1982). This decision was imprudent. Plaintiffs should have moved for both remedies at the outset and let the court decide which to grant. We hold that plaintiffs' untimely request for prejudgment interest constitutes a countervailing equitable consideration militating against such a surcharge.
 
 V. LEGAL MALPRACTICE
 
 69
 Plaintiff Dorothy Loughman claims that the district court erred when it granted Attorney Ewing Pollock judgment n.o.v. on her legal malpractice action. We agree and will reverse.
 
 
 70
 To establish legal malpractice under Pennsylvania law, plaintiffs must show three elements: (1) employment of the attorney or other basis for a duty owed to the client; (2) failure of the attorney to exercise ordinary skill and knowledge; and (3) the attorney's negligence proximately caused damage to the client. Rizzo, 520 Pa. at 499, 555 A.2d at 65 (quoting Schenkel v. Monheit, 266 Pa.Super. 396, 405 A.2d 493, 494 (1979)). Viewing the evidence in a light most favorable to Loughman, we conclude that the evidence was sufficient to support a finding of legal malpractice.
 
 
 71
 Loughman owned 50.79 acres of land in the area of interest. An Upshur agent approached her and claimed that he represented Monongahela. He offered to purchase her property for $60,000. Loughman rejected the offer. The agent threatened that Monongahela would use its condemnation authority to take a 13 acre right-of-way for $1000 per acre. If Monongahela condemned the 13 acres, most of Loughman's property would be rendered inaccessible.
 
 
 72
 The same day Loughman telephoned her attorney Pollock. She had known Pollock for about forty-two years, and he had handled legal matters for her and her family. At that time Pollock was working for Monongahela, unbeknownst to Loughman. Loughman explained the situation, and Pollock told her not to worry because Monongahela would be fair. He also told her she did not need an attorney to negotiate with the Upshur agent.
 
 
 73
 Under these circumstances, we conclude sufficient evidence exists to find an attorney-client relationship, lack of ordinary care, and proximate cause. When Loughman called Pollock, an attorney-client relationship was formed. She called him to seek his legal advice. He accepted this offer and readily gave advice. That Pollock previously represented her only furthers this conclusion. When Pollock told her that Monongahela would be fair without knowing what price had been offered, and when he failed to tell her Consol was involved and he represented Consol, Pollock failed to exercise ordinary skill and knowledge. Since Loughman testified that she agreed to sell only after she had consulted with Pollock, his advice and representations proximately caused her lost profits. Therefore the district court erred by failing to uphold the jury verdict on malpractice.[3]
 
 VI. DISTRICT COURT'S REMARKS
 
 74
 Upshur agents contend the district court deprived them of a fair trial by calling them liars. Specifically, they complain about the district court's remarks that they "lied" if they represented that property could be condemned for a fixed price. We disagree and will affirm.
 
 
 75
 In American Home Assur. v. Sunshine Supermarket, we stated:
 
 
 76
 A federal judge is permitted to summarize and comment upon the evidence.... The court's comments, however, may not confuse or mislead the jury, or become so one-sided as to assume an advocate's position.
 
 
 77
 753 F.2d 321, 327 (3d Cir.1985). Here, the district court merely characterized the great weight of the testimony and drew a correct conclusion. If the district court's comments confused or misled the jury, we still find no prejudicial error for the judge cured any error. He instructed the jury that only its decision counts and that it does not "have to be influenced" by anything he thinks or says.
 
 VII. CONCLUSION
 
 78
 We conclude that the district court erred by setting aside the first damage award; the first award of punitive damages was adequately supported by the record; plaintiff landowners are not entitled to either prejudgment interest or delay damages; the district court properly granted judgment n.o.v. on the RICO claim since the continuity requirement was not satisfied; the Upshur agents' representation of Monongahela's condemnation power was a true statement; the district court properly instructed the jury as to the law of misrepresentation; the plaintiffs could have justifiably relied on the Upshur agents' statements concerning the tax free nature of the property transactions; the district court erred by granting judgment n.o.v. on landowner Loughman's legal malpractice claim; and the district court's remark did not deprive defendants of a fair trial. We will vacate the second damage award and reinstate the first award returned by the jury.
 
 
 
 *
 Honorable Marvin Katz, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The landowners cite Central of Georgia Railway, 336 I.C.C. 623 (1970) for the proposition that a 14.5 mile track could not be a spur. In Central of Georgia Railway, the ICC concluded that a 14.45 mile track costing more than $3 million was an extension. The decision was based on the length of the track and the cost alone. We refuse to adopt this reasoning since, a track's designation depends on its use, not the length and cost alone
 
 
 [2]
 The defendants claim that the landowners are only entitled to out-of-pocket losses rather than the benefit of the bargain. The cases cited, however, concern fraudulent misrepresentations by a seller to a purchaser. Here, we are faced with the converse situation
 
 
 [3]
 The defendant attorneys argue that there is no evidence that Pollock fraudulently misrepresented Monongahela's condemnation powers to Dorothy Loughman, made any misrepresentations concerning the role of Consol or any other defendant in the transaction, or told her that a portion of the purchase price would be tax free
 Notwithstanding these arguments, the requisite minimum quantum of evidence supports the jury verdict against Attorney Pollock. Pollock told Loughman that Monongahela would treat her fairly without knowing the offered price for her parcel. Furthermore, he failed to disclose his representation of the defendants although he had a duty to do so. This evidence adequately supports a jury finding that Pollock committed fraud in his dealings with Loughman.